Corbett HALL, Jr., Appellant,

v.

The STATE of Texas, State.

No. 2–99–004–CR.

Court of Appeals of Texas,
Fort Worth.

Jan. 27, 2000.

James Rasmussen, Wichita, for Appellant.

Barry L. Macha, Crim. Dist. Atty., John W. Brasher, Maureen O'Brien, Asst. Crim. Dist. Attys., Wichita Falls, for Appellee.

Panel A: CAYCE, C.J.; DAUPHINOT, J.; and WILLIAM BRIGHAM, J. (Retired, Sitting By Assignment).

## OPINION

WILLIAM BRIGHAM, Justice (Retired).

On a plea of not guilty, a jury found Appellant Corbett Hall, Jr. guilty of aggravated sexual assault and sentenced him to life imprisonment. Appellant brings three points, complaining of improper closing argument and two evidentiary rulings. Because the prosecutor improperly alluded to Appellant's failure to testify, we reverse and remand this cause for a new hearing on punishment.

## I. CLOSING ARGUMENT

Appellant contends in point one that the State, during closing argument at the punishment phase, improperly commented on Appellant's failure to testify at trial in violation of the Fifth Amendment to the United States Constitution, Article 1, Section 10 of the Texas Constitution, and article 38.08 of the code of criminal procedure.[1]

Near the end of her jury argument, the prosecutor argued to the jury:

[STATE:] Then he assaults her once, she gets away and that wasn't enough for him. Remember, she's curled up in a ball and does he go away? No. *Does he feel remorse?* No. What does he do? He grabs her and throws her back on the bed and does it again. She gets

away, locks herself in the bathroom, and then what does he do? Takes the TV. That wasn't enough for him to assault his niece twice. No, he wants to take the TV.

*And then has he ever accepted responsibility for this? No. Has he ever shown remorse for this? No.*

[DEFENSE:] Judge, I'll object to that as the failure—a comment on the failure of the defendant to testify.

THE COURT: Overruled. [Emphasis added.]

▬ Article 38.08 of the code of criminal procedure provides that if the accused invokes his right not to testify during his trial, it shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by the prosecuting attorney. *See* Tex.Code Crim. Proc. Ann. art. 38.08 (Vernon 1979). For the argument or comment of the prosecuting attorney to offend article 38.08, the language must be viewed from the standpoint of the jury, and there must be a clear implication that the language used referred to the accused's failure to testify. *See Dickinson v. State,* 685 S.W.2d 320, 323 (Tex.Crim.App.1984). A comment that directly focuses the jury's attention on the defendant's personal feelings of remorse, which can only be supplied through the defendant's own testimony, necessarily implicates the defendant's failure to testify. *See Caldwell v. State,* 818 S.W.2d 790, 800 (Tex.Crim.App.1991), *cert. denied,* 503 U.S. 990, 112 S.Ct. 1684, 118 L.Ed.2d 399 (1992), *overruled on other grounds by* 913 S.W.2d 529 (Tex.Crim.App.1995). When no testimony exists concerning the defendant's lack of remorse, a comment on his lack of remorse would naturally and necessarily be one on the defendant's failure to testify because only the defendant can tes-

---

1. Appellant does not separately brief his federal and state constitutional questions. His analysis with regard to this point is based solely on article 38.08 of the code of criminal procedure. Therefore, we decline to address the constitutional issues as inadequately briefed. *See* Tex.R.App. P. 38.1(h); *Moore v. State,* 935 S.W.2d 124, 128 (Tex.Crim.App. 1996), *cert. denied,* 520 U.S. 1219, 117 S.Ct. 1711, 137 L.Ed.2d 835 (1997); *Heitman v. State,* 815 S.W.2d 681, 691 n. 23 (Tex.Crim. App.1991).

tify as to his own remorse. *See Swallow v. State*, 829 S.W.2d 223, 225 (Tex.Crim.App. 1992). The test employed is whether the comment by the prosecutor was manifestly intended or was of such character that the jury would naturally and necessarily interpret it as a comment on the accused's failure to testify. *See Caldwell*, 818 S.W.2d at 800. The facts and circumstances of each case must be analyzed to determine whether the language was of such character. *See id.* (citing *Dickinson*, 685 S.W.2d at 323).

■ There is nothing in the reporter's record to indicate that Appellant behaved or conducted himself in other than an acceptable manner during the trial. During the punishment phase of the trial, Appellant, after taking an oath as a witness, testified outside the presence of the jury as follows:

[DEFENSE:] Will you state your name, please?

[APPELLANT:] Corbett Hall.

[DEFENSE:] And you're the defendant in this case presently pending before the Court, right?

[APPELLANT:] Yes, I am.

[DEFENSE:] Now, Corbett, have I advised you of your Fifth Amendment privilege against self-incrimination?

[APPELLANT:] Yes, sir. Yes, sir.

[DEFENSE:] You understand you have a right to testify either at the first stage of this trial when you did not testify, and you have a right to testify at this stage of the trial; do you understand that?

[APPELLANT:] Yes, sir. Yes, sir.

[DEFENSE:] Have you made a decision that you did not want to testify at the first stage of the trial?

[APPELLANT:] Do I make a decision not to testify now?

[DEFENSE:] Yes, sir. Did you— Well, we're in the second stage of the trial. At the first stage of the trial did you tell me you did not want to testify?

[APPELLANT:] Yes, sir.

[DEFENSE:] And I advised you if you didn't testify, the Judge would instruct the jury that should not be considered as any evidence against you, right?

[APPELLANT:] Yes, sir.

[DEFENSE:] Now we're in the second stage of the trial. It is your testimony you don't want to testify at this stage?

[APPELLANT:] No, sir.

[DEFENSE:] I probably asked that question wrong. Do you want to testify at this stage of the trial?

[APPELLANT:] No, sir.

[DEFENSE:] Okay. And do you understand the Judge will instruct the jury not to consider that as any evidence against you; is that correct?

[APPELLANT:] Yes, sir.

[DEFENSE:] All right, fine. Thank you. That's all I have.

THE COURT: Thank you, Mr. Hall. You may step down.

After a careful review of the record, we can find no other comment by Appellant. The reporter's record clearly reflects that Appellant exercised his right to remain silent. Also, there is no testimony from any witness concerning statements or conduct by Appellant that would indicate a lack of remorse.

■ The State contends that the complained-of argument immediately followed a reference to Appellant's demeanor exhibited during the criminal episode. Therefore, the State reasons, the jury could view the subsequent reference as another reference to Appellant's demeanor at the time of the assault. We disagree. The prosecutor's first statement was made in an attempt to show the jury that Appellant had no remorse at the time of the assault because he did it twice and then took the television. But the second reference to remorse was "[h]as he *ever* shown remorse for this? No." [Emphasis added.] This

statement clearly asks the jury to consider whether Appellant demonstrated remorse[2] *at any time*, which necessarily refers to Appellant's in-court demeanor as well.[3]

We sustain point one and hold that the prosecutor's second comment that Appellant has never shown remorse for his actions was clearly a direct comment on Appellant's failure to testify. The necessary and natural effect of the prosecutor's comments, viewed from the standpoint of the jury, was to direct the jury's attention to the Appellant's invocation of his right to remain silent. *See Dickinson*, 685 S.W.2d at 322–24.

Having determined that the prosecutor's comment was outside the areas of permissible argument, we must determine whether the error warrants reversal. *See Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim.App.1998) (op. on reh'g), *cert. denied*, —— U.S. ——, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999). Under Texas Rule of Appellate Procedure 44.2, we must determine whether the error is constitutional. *See* TEX.R.APP. P. 44.2. If so, we apply rule 44.2(a) and reverse unless we determine beyond a reasonable doubt that the error did not contribute to Appellant's conviction or punishment. *See* TEX.R.APP. P. 44.2(a). Otherwise, we apply rule 44.2(b) and disregard the error if it does not affect Appellant's substantial rights. *See* TEX. R.APP. P. 44.2(b); *See Mosley*, 983 S.W.2d at 259.

Error in jury argument is subject to a harm analysis under rule 44.2(b). *See Orona v. State*, 791 S.W.2d 125, 129–30 (Tex.Crim.App.1990); *Coggeshall v. State*, 961 S.W.2d 639, 643 (Tex.App.—Fort Worth 1998, pet. ref'd) (en banc). Under rule 44.2(b), we are to disregard the error unless it affects Appellant's substantial rights. *See* TEX.R.APP. P. 44.2(b). A substantial right is affected when the error had a substantial injurious effect or influence on the jury's verdict. *See King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997). We review the record as a whole to determine whether the error had a substantial influence on the verdict. *See Mosley*, 983 S.W.2d at 260. It is not sufficient to determine harmfulness simply by examining whether there is overwhelming evidence to support the conviction, although that is a factor to be considered. *See Orona*, 791 S.W.2d at 130. Although the evidence is ample to support the conviction of guilt, we must also consider the source and nature of the error, whether it was emphasized by the State, and its probable collateral implications. *See id.*

Examining the State's jury argument at the punishment stage, we find that it began with a request that the jury find the enhancement paragraphs in the indictment true, and asked that they impose a life sentence. Next, the State asked the jury to "[r]emember the [Appellant] knew that his niece had been sexually abused in the past, but yet he decides to sexually abuse her."[4] Then the State followed up this

---

2. Remorse is defined as a growing distress arising from a sense of guilt for past wrongs. *See* WEBSTER'S THIRD NEW INT'L DICTIONARY 1921 (1981). It calls for some outward action. The only evidence of outward action in this record by Appellant was his invocation of his right to remain silent.

3. The State also argues that if the second question regarding remorse posed by the prosecutor was in fact a comment on Appellant's failure to testify, then so was the immediately preceding question which insinuated that Appellant had never accepted responsibility for the crime. Thus, the State contends, Appellant's objection, which came after the second remorse statement, was untimely in

that Appellant failed to object as soon as the objectionable nature of the argument first became apparent. We disagree. The immediately preceding comment that Appellant had never accepted responsibility for the crime is distinguishable. To "accept responsibility" means to receive or consent to moral, legal, or mental accountability. *See* WEBSTER'S THIRD NEW INT'L DICTIONARY 1935 (1981). This does not necessarily require any outward action on the part of Appellant. The statement could properly be viewed as a plea for law enforcement.

4. Defense counsel objected to that argument as being outside the record. The trial court

comment with its comment on Appellant's lack of remorse, which we have already determined was a direct comment on Appellant's failure to testify. After a brief discussion of Appellant's criminal history, the State concluded by a reference to the State's request during voir dire to "put this man in a metal cage for the rest of his life."

█ The error in this case encroached Appellant's fundamental constitutional right against self-incrimination. *See* TEX. CONST. art. I, § 10. Just before the glaring reference to Appellant's failure to testify, the State made an improper reference to highly inflammatory evidence not in the record. Based upon a review of the entire argument and record, and in light of the maximum sentence assessed, we hold that the State's reference to Appellant's failure to testify had a significant or injurious affect on the jury's verdict such that Appellant's substantial rights were affected. As the Court of Criminal Appeals has instructed, when the State violates article 38.08, the duty of the reviewing court is clear, and "the responsibility for the reversal must rest solely upon the prosecuting attorney." *Dickinson*, 685 S.W.2d at 322.

We therefore reverse and remand this case for a new punishment hearing in accordance with article 44.29(b). *See* TEX. CODE CRIM. PROC. ANN. art. 44.29(b) (Vernon Supp.2000).

## II. ADMISSION OF EXPERT TESTIMONY

█ In point two, Appellant contends the trial court erred in admitting DNA expert testimony and evidence because the prosecutor failed to establish a proper chain of custody sufficient to warrant ad-

mission of such evidence.[5] *See* TEX.R. EVID. 901.

### A. CHAIN OF CUSTODY

Appellant's second point regarding chain of custody centers around his complaint that the State wholly failed to elicit any testimony positively identifying the swabs analyzed by the laboratory that performed the DNA analysis as having come from the victim. We address this point under the familiar abuse-of-discretion standard. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1991) (op. on reh'g).

### B. APPLICABLE LAW

█ Rule 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *See* TEX.R. EVID. 901(a). It is well settled that minor theoretical breaches in the chain of custody go to the weight rather than to the admissibility of the evidence. *See, e.g., DeLeon v. State*, 505 S.W.2d 288, 289 (Tex.Crim.App.1974). Proof of the beginning and end of the chain will support admission of the evidence barring any showing of tampering or alteration. *See Stoker v. State*, 788 S.W.2d 1, 10 (Tex. Crim.App.1989), *cert. denied*, 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990).

### C. APPLICATION

For trial purposes, the victim was identified as "Christina," and had been assigned pseudonym number 92–111850. She testified that after she was assaulted by Appellant, she was taken to a hospital and examined by a doctor. Officer Thomas Farris, who went to the hospital to meet with

---

sustained the objection and instructed the jury to disregard it.

5. In point three, Appellant argues the DNA evidence was erroneously admitted based on rule 705. *See* TEX.R. EVID. 705. We decline to address this point because Appellant objected at trial on grounds of irrelevancy, in-

sufficient chain of custody, and spoliation. Because Appellant's complaint on appeal does not comport with the complaint made in the trial court, any error as to rule 705 is waived. *See House v. State*, 947 S.W.2d 251, 253 (Tex. Crim.App.1997). We overrule point three on that basis.

Christina, testified that he was given a sealed sex crime kit from Sheila Harvey, a nurse, and that the kit was given the identifying number 92–111850. Farris took the kit to the police department and placed it in a secured locker. He further testified there was no evidence of tampering.

Harvey testified that she was present during the examination of the victim. After the sex crime kit was sealed, she personally handed it to the police officer who accompanied Christina.

There was testimony that the sex crime kit was removed from the property room, mailed to the DPS laboratory by certified mail, received by the laboratory serologist in a sealed condition, secured in a locked vault, and then removed and transported to the DNA laboratory. Additionally, Appellant's blood sample is easily traced through the testimony of John Little, an investigator for the Wichita County Attorney's Office, from the time the blood was drawn until the time it was delivered to the DNA laboratory for analysis. Testing revealed that the genetic profile obtained from the sperm taken from Christina was identical to the genetic profile obtained from Appellant's blood.

We hold that the trial court did not abuse its discretion in admitting the DNA evidence. Point two is overruled.

### III. CONCLUSION

Having sustained point one, we reverse and remand this case to the trial court for a new punishment hearing.