COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO. 2-05-186-CR

 

 

KENNETH
ALAN THOMAS                                                     APPELLANT

 

                                                   V.

 

THE STATE
OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. Introduction

Appellant Kenneth Alan Thomas appeals his
conviction for aggravated assault.  The
jury assessed Thomas=s punishment at eight years=
confinement and a $10,000 fine, and the trial court sentenced him
accordingly.  Thomas raises four issues
on appeal.  We will affirm.








II.  Factual and Procedural Background

Around 8:30 on a Saturday evening, process server
Bruce Roberson went to Thomas=s house
to serve Thomas a subpoena.  Roberson
parked his motorcycle in front of Thomas=s house,
went to the door, and rang the bell a few times.  No one answered.  Roberson got back on his motorcycle, and as
he started the engine, he heard a Akapow@ and
felt a bullet hit him in the back of his shoulder.  Roberson immediately drove to a nearby
convenience store and called 911.  

Police arrived at the convenience store shortly
thereafter.  After talking to Roberson,
the officers determined that the shot must have come from the south side of the
street, the side where Thomas=s house
is located.  The officers went to Thomas=s home
and knocked on the door.  No one
answered, although the officers could see Apeople
in movement@ inside the home.  Officers also called the house but did not
get an answer.  








Officers talked to a young girl who lived next
door to Thomas, and she told the officers that she had heard a motorcycle
engine start and Atwo pops@ and
that she thought it had come from Anear the
side of the house,@ which was Thomas=s
house.  An officer in the alley behind
Thomas=s house
saw Thomas step out onto his patio in his backyard, and the officer started
talking to him through the backyard fence. 
The officer told Thomas someone had been shot in front of his house and
asked him to go to his front door and talk to the officers.  Thomas refused, stating that he would not go
to his front door because he did not want to be arrested.  The officers conversed with Thomas through
his fence for about thirty minutes, during which time Thomas was very evasive
and excited.  When one officer convinced
Thomas to take a card from him through the fence, the other officers entered
Thomas=s
backyard and eventually gained control over him.  Sergeant Digmon explained to Thomas that the
officers were in the process of obtaining a warrant to search his home, that
Thomas would not be allowed back in his house until after the search warrant
had been executed, but that he was free to leave.  Thomas and his girlfriend, who had been
inside Thomas=s home, left on foot.  








A search warrant was issued based on A[Thomas=s]
refusal to speak with officers, his statement that officers would arrest him if
he exited his home, his complaints against civil processors,[[2]]
the trajectory of the shot fired that struck [Roberson], and the next
door neighbor who heard the shot.@  After the search warrant had been signed, the
officers entered Thomas=s house to execute it. While
executing the search warrant, police discovered a gun that was later determined
to be the gun used to shoot Roberson. 

III.  Motion to Suppress

In his first issue, Thomas raises four challenges
to the trial court=s denial of portions of his
motion to suppress.[3]  The State points out that, at the guilt
innocence phase of Thomas=s trial, the only evidence
admitted into evidence that was obtained as a result of the search was several
photographs of the gun used to shoot Roberson, the gun itself, and photographs
of three other small caliber guns found in Thomas=s house.[4]  The State thus contends, and we agree, that
we are required to review only alleged error in the failure to suppress these
items that were introduced into evidence.













At trial, when the State first offered several
photographs of guns other than the one used to shoot Roberson found in Thomas=s home,
Thomas objected to the admission of fifteen of the photographs of Alarge
caliber automatic weapons@ found in his home, and the
trial court sustained those objections. 
Thomas affirmatively stated that he had Ano
objection@ to the admission of three
photographs of handguns that resembled the one used to shoot Roberson, and the
trial court admitted these photographs. 
The State next sought to introduce photographs of the actual gun used to
shoot Roberson and of the location where the gun was found in Thomas=s
house.  Thomas asserted that he had no
objection to those photographs if the predicate for admission was laid by
asking whether the photographs truly and accurately depicted the items shown;
the State laid this predicate.  Because
Thomas either affirmatively asserted Ano
objection@ or affirmatively asserted Ano
objection if they=ll lay the proper predicate,@ any
error in the trial court=s refusal to suppress the above
evidence is not preserved for our review. 
See Swain v. State, 181 S.W.3d 359, 368 (Tex. Crim. App. 2005)
(holding that the affirmative acceptance of evidence waives any error in its
admission), petition for cert. filed, ___ U.S.L.W. ___ (U.S. Apr. 25,
2006) (No. 05-11514); Jones v. State, 833 S.W.2d 118, 126 (Tex. Crim.
App. 1992) (same), cert. denied, 507 U.S. 921 (1993).  Additionally, although Thomas did not
indicate that he had no objection when the State introduced several additional
photos of the actual gun used to shoot Roberson and the gun itself, these items
were cumulative of the photographs to which Thomas affirmatively had no
objection.  See Leday v. State,
983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (holding that no harm to defendant
can occur when trial court overrules an objection to evidence when the same
evidence has been admitted without objection); see also Brackens v. State,
No. 14‑00‑00591‑CR, 2001 WL 1013425, at *2 (Tex. App.CHouston
[14th Dist.] Sept. 6, 2001, no pet.) (not designated for publication) (holding
defendant waived any error in admitting bloodstained shorts when he
affirmatively stated that he had no objection to admission of photographs of
same evidence).  Consequently, any error
in the admission of these items was harmless. 
See  Leday, 983 S.W.2d at
718 .

Thomas=s other
arguments relating to the trial court=s denial
of portions of his motion to suppress do not point out specific evidence seized
pursuant to the warrant and offered into evidence.  A defendant must point out the specific
evidence that should have been suppressed based on an allegedly defective
warrant.  Massey v. State, 933
S.W.2d 141, 148 (Tex. Crim. App. 1996). 
Because Thomas=s other suppression arguments do
not identify specific evidence that should have been suppressed based on the
allegedly defective warrant nor claim that the evidence that should have been
suppressed was actually admitted into evidence at trial, these complaints are
not preserved for our review.  See id.  Thus, we overrule Thomas=s first
issue.








IV.  Chain of Custody

In his second issue, Thomas claims that the trial
court abused its discretion by admitting as evidence the bullet that was taken
from Roberson=s shoulder.  Specifically, he argues that the State failed
to establish a chain of custody and that the breaks in the chain of custody
allowed the bullet to be tampered with or substituted.   

A trial court's decision to admit or exclude
evidence is afforded a great deal of discretion; thus, we review a trial court's
ruling on admissibility or exclusion of evidence under an abuse of discretion
standard.  See Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997); Hall v. State, 13 S.W.3d 115,
120 (Tex. App.CFort Worth 2000) (applying abuse
of discretion standard to chain of custody issue), pet. dism=d,
improvidently granted, 46 S.W.3d 264 (Tex. Crim. App. 2001).  We will uphold a trial court's evidentiary
ruling if it is reasonably supported by the record and is correct under any
theory of applicable law.  Martin v.
State, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005); see Cantu v. State,
842 S.W.2d 667, 682 (Tex. Crim. App. 1992), cert. denied, 509 U.S. 926
(1993).








The proponent of physical evidence has the burden
of showing that the evidence is what it purports to be, which includes showing
the chain of custody of the evidence.  See Tex.
R. Evid. 901(a).  Minor gaps in
the chain of custody, however generally go to the weight and credibility of the
evidence in question, not its admissibility. 
Lagrone v. State, 942 S.W.2d 602, 617 (Tex. Crim. App.), cert.
denied, 522 U.S. 917 (1997).  Proof
of the beginning and end of the chain of custody generally will support
admission of the evidence barring any showing of tampering or alteration.  Hall, 13 S.W.3d at 120.








Here, after Roberson was shot, the bullet was not
removed from his shoulder for about two weeks. 
The police department arranged for the bullet to be removed from
Roberson=s
shoulder at a medical center while Investigators David Taylor and Craig Allen
were present.  The investigators
testified that the doctor removed the bullet and placed it in a specimen
jar.  Investigator Allen testified that
he took the specimen jar to the police department, where he sealed it, marked
it, and placed it in the department=s
evidence room for storage.[5]  Investigator Allen testified that fourteen
days after he placed the bullet in storage, he took the bullet to the evidence
technician at the Tarrant County Medical Examiner=s
Office, specifically to the area where police officers drop off evidence for
processing.  Before the bullet was
admitted into evidence, neither Investigator Allen nor any other witness
testified to the end of the chain of custody, for example, that he retrieved
the bullet from the evidence room on the day of trial, but this only means that
the chain of custody was not conclusively proven.  See Hall, 13 S.W.3d at 120; see
also Stoker v. State, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989), cert.
denied, 498 U.S. 951 (1990) (stating that chain of custody is conclusively
proven if an officer is able to identify that he seized the evidence, put an
identification mark on it, placed it in the property room, and then retrieved
the item being offered on the day of trial). 
It is well settled that minor theoretical breaches in the chain of
custody go to the weight rather than to the admissibility of the evidence.  Hall, 13 S.W.3d at 120. 








But Thomas argues that because the bullet was in
such good condition after passing through Roberson=s
satchel, leather jacket, vest, and two shirts before lodging in his shoulder,
someone in the chain of custody must have Afired [a
bullet] into cotton and wiped the bullet off and put it in the specimen jar.@  The State=s expert
testified that the bullet was in surprisingly good condition, but he never
testified that Aall bullets distort when they
hit something, even water,@ as
Thomas contends.  This argument is not
supported by the record before us.  Here,
the trial court could have decided from the evidence that a reasonable juror
could find that the bullet was authenticated or identified.  See Jackson v. State, 968 S.W.2d 495, 499
(Tex. App.CTexarkana 1998, pet. ref=d); Pena
v. State, 864 S.W.2d 147, 152 (Tex. App.CWaco
1993, no pet.) (op. on reh=g).  Consequently, we hold that the trial court
did not abuse its discretion by determining that the chain of custody was
sufficient and by admitting the bullet into evidence.  See Guzman, 955 S.W.2d at 89; see
also Hall, 13 S.W.3d at 120. We overrule Thomas=s second
issue.

V.  Requested Jury Instructions Properly Denied

After both sides rested, Thomas=s
defense counsel presented the trial court with several requested instructions
to be included in the court=s
charge, including an instruction on self-defense and instructions on the lesser
included offenses of assault and reckless conduct.  The trial court denied Thomas=s
requests for the lesser included offense instructions, but included an
instruction on self-defense.   








In his third issue, Thomas contends that the
trial court erred by denying his requested instructions on self-defense and the
lesser included offenses of assault and reckless conduct.  Because the trial court did in fact include a
self-defense instruction in its charge, we overrule the portion of Thomas=s third
issue complaining of the absence of a self-defense instruction.  

We will address Thomas=s
complaints concerning the trial court=s
failure to give the lesser included offense instructions.  We use a two-pronged test to determine
whether a defendant is entitled to an instruction on a lesser included
offense.  Rousseau v. State, 855
S.W.2d 666, 672-73 (Tex. Crim. App.), cert. denied, 510 U.S. 919 (1993);
Royster v. State, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981).  First, the lesser included offense must be
included within the proof necessary to establish the offense charged.  Salinas v. State, 163 S.W.3d 734, 741
(Tex. Crim. App. 2005); Rousseau, 855 S.W.2d at 672-73; Royster,
622 S.W.2d at 446.  Second, some evidence
must exist in the record that would permit a jury to rationally find that if
appellant is guilty, he is guilty only of the lesser offense.  Salinas, 163 S.W.3d at 741; Rousseau,
855 S.W.2d at 672-73; Royster, 622 S.W.2d at 446. 








Assault and reckless conduct are not per se
lesser included offenses of aggravated assault. 
See Irving v. State, 176 S.W.3d 842, 845 (Tex. Crim. App. 2005)
(holding that assault was not a lesser included offense of aggravated assault
in that case); Bell v. State, 693 S.W.2d 434, 438 (Tex. Crim. App. 1985)
(stating that reckless conduct is not necessarily a lesser included offense of
each form of assault).  Instead, the
determination of whether assault is a lesser included offense of aggravated
assault must be made on a case-by-case basis. 
Bartholomew v. State, 871 S.W.2d 210, 212 (Tex. Crim. App.
1994).  Thomas has not discussed or
pointed this court toCand we have not locatedCevidence
that if guilty, he is guilty only of assault or reckless conduct.[6]  Thus, we overrule Thomas=s third
issue. 

VI.  Trial Court Bias








In his fourth issue, Thomas argues that the trial
court erred by exhibiting bias for the State. 
Thomas does not assert that the trial judge should have been
disqualified; instead, he argues that the trial court erred by exhibiting bias
for the State and that we should Areverse
[his conviction] for plain error.@     It is true that while sufficient bias can
result in disqualification, it does so only in those cases in which the bias is
shown to be of such a nature and to such an extent as to deny a defendant due
process of law.  Westbrook v. State,
29 S.W.3d 103, 121 (Tex. Crim. App. 2000), cert. denied, 532 U.S. 944
(2001).  We have reviewed the record in
its entirety, and we do not find that the trial court exhibited bias against
Thomas so as to deny him due process of law. 
In fact, the trial court allowed Thomas to fully develop a record
through several bills of exceptions so that he could seek review of the trial
court=s
suppression rulings, and the court held a lengthy hearing on Thomas=s motion
to suppress and even Thomas=s
defense counsel what type of evidence would be helpful in determining the
suppression issues.  Consequently, we
overrule Thomas=s fourth issue.

VII.  Conclusion

Having overruled each of Thomas=s four
issues, we affirm the trial court=s
judgment.

 

SUE WALKER

JUSTICE

 

PANEL A:   CAYCE,
C.J.; HOLMAN and WALKER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: July 6, 2006











[1]See Tex. R. App. P. 47.4.





[2]The officers knew of at least one prior call from
Thomas about process servers harassing him at his home. 





[3]Thomas=s trial counsel diligently asserted numerous grounds
supporting Thomas=s suppression requests and succeeded in obtaining
suppression of the documents police seized from Thomas=s attic
and of all evidence seized before police obtained the search warrant.  





[4]During the punishment phase of trial, the State also
introduced evidence of drugs and drug paraphernalia found during the search of
Thomas=s house, and Thomas stated that he had Ano
objection@ to this evidence.  






[5]Specifically, Investigator Allen testified that he put
evidence tape on the specimen jar and marked it with his initials and the
date.  He testified that he then put the
specimen jar in a paper bag, sealed the bag, marked it with evidence tape, and
put it in a secure evidence refrigerator. 
At trial, he identified his initials and date on the paper bag.    





[6]Thomas does point to evidence showing that he was
entitled to an instruction on self-defense, which he received.