Thomas v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-186-CR

KENNETH ALAN THOMAS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. 
Introduction

Appellant Kenneth Alan Thomas appeals his conviction for aggravated assault.  The jury assessed Thomas’s punishment at eight years’ confinement and a $10,000 fine, and the trial court sentenced him accordingly.  Thomas raises four issues on appeal.  We will affirm.

II.  Factual and Procedural Background

Around 8:30 on a Saturday evening, process server Bruce Roberson went to Thomas’s house to serve Thomas a subpoena.  Roberson parked his motorcycle in front of Thomas’s house, went to the door, and rang the bell a few times.  No one answered.  Roberson got back on his motorcycle, and as he started the engine, he heard a “kapow” and felt a bullet hit him in the back of his shoulder.  Roberson immediately drove to a nearby convenience store and called 911.  

Police arrived at the convenience store shortly thereafter.  After talking to Roberson, the officers determined that the shot must have come from the south side of the street, the side where Thomas’s house is located.  The officers went to Thomas’s home and knocked on the door.  No one answered, although the officers could see “people in movement” inside the home.  Officers also called the house but did not get an answer.  

Officers talked to a young girl who lived next door to Thomas, and she told the officers that she had heard a motorcycle engine start and “two pops” and that she thought it had come from “near the side of the house,” which was Thomas’s house.  An officer in the alley behind Thomas’s house saw Thomas step out onto his patio in his backyard, and the officer started talking to him through the backyard fence.  The officer told Thomas someone had been shot in front of his house and asked him to go to his front door and talk to the officers.  Thomas refused, stating that he would not go to his front door because he did not want to be arrested.  The officers conversed with Thomas through his fence for about thirty minutes, during which time Thomas was very evasive and excited.  When one officer convinced Thomas to take a card from him through the fence, the other officers entered Thomas’s backyard and eventually gained control over him.  Sergeant Digmon explained to Thomas that the officers were in the process of obtaining a warrant to search his home, that Thomas would not be allowed back in his house until after the search warrant had been executed, but that he was free to leave.  Thomas and his girlfriend, who had been inside Thomas’s home, left on foot.  

A search warrant was issued based on “[Thomas’s] refusal to speak with officers, his statement that officers would arrest him if he exited his home, his complaints against civil processors,
[
(footnote: 2)] 
the trajectory of the shot fired that struck [Roberson], and the next door neighbor who heard the shot.”  After the search warrant had been signed, the officers entered Thomas’s house to execute it. While executing the search warrant, police discovered a gun that was later determined to be the gun used to shoot Roberson. 

III.  Motion to Suppress

In his first issue, Thomas raises four challenges to the trial court’s denial of portions of his motion to suppress.
(footnote: 3)  The State points out that, at the guilt innocence phase of Thomas’s trial, the only evidence admitted into evidence that was obtained as a result of the search was several photographs of the gun used to shoot Roberson, the gun itself, and photographs of three other small caliber guns found in Thomas’s house.
(footnote: 4)  The State thus contends, and we agree, that we are required to review only alleged error in the failure to suppress these items that were introduced into evidence.

At trial, when the State first offered several photographs of guns other than the one used to shoot Roberson found in Thomas’s home, Thomas objected to the admission of fifteen of the photographs of “large caliber automatic weapons” found in his home, and the trial court sustained those objections.  Thomas affirmatively stated that he had “no objection” to the admission of three photographs of handguns that resembled the one used to shoot Roberson, and the trial court admitted these photographs.  The State next sought to introduce photographs of the actual gun used to shoot Roberson and of the location where the gun was found in Thomas’s house.  Thomas asserted that he had no objection to those photographs if the predicate for admission was laid by asking whether the photographs truly and accurately depicted the items shown; the State laid this predicate.  Because Thomas either affirmatively asserted “no objection” or affirmatively asserted “no objection if they’ll lay the proper predicate,” any error in the trial court’s refusal to suppress the above evidence is not preserved for our review.  
See Swain v. State
, 181 S.W.3d 359, 368 (Tex. Crim. App. 2005) (holding that the affirmative acceptance of evidence waives any error in its admission),
 petition for cert. filed
, ___ U.S.L.W. ___ (U.S. Apr. 25, 2006) (No. 05-11514); 
Jones v. State
, 833 S.W.2d 118, 126 (Tex. Crim. App. 1992) (same), 
cert. denied
, 507 U.S. 921 (1993).  Additionally, although Thomas did not indicate that he had no objection when the State introduced several additional photos of the actual gun used to shoot Roberson and the gun itself, these items were cumulative of the photographs to which Thomas affirmatively had no objection.  
See Leday v. State
, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (holding that no harm to defendant can occur when trial court overrules an objection to evidence when the same evidence has been admitted without objection); 
see also Brackens v. State
, No. 14-00-00591-CR, 2001 WL 1013425, at *2 (Tex. App.—Houston [14th Dist.] Sept. 6, 2001, no pet.) (not designated for publication) (holding defendant waived any error in admitting bloodstained shorts when he affirmatively stated that he had no objection to admission of photographs of same evidence).  Consequently, any error in the admission of these items was harmless.  
See  Leday
, 983 S.W.2d at 718 
.

Thomas’s other arguments relating to the trial court’s denial of portions of his motion to suppress do not point out specific evidence seized pursuant to the warrant and offered into evidence.  A defendant must point out the specific evidence that should have been suppressed based on an allegedly defective warrant.  
Massey v. State
, 933 S.W.2d 141, 148 (Tex. Crim. App. 1996).  Because Thomas’s other suppression arguments do not identify specific evidence that should have been suppressed based on the allegedly defective warrant nor claim that the evidence that should have been suppressed was actually admitted into evidence at trial, these complaints are not preserved for our review.  
See id.
  Thus, we overrule Thomas’s first issue.

IV.  Chain of Custody

In his second issue, Thomas claims that the trial court abused its discretion by admitting as evidence the bullet that was taken from Roberson’s shoulder.  Specifically, he argues that the State failed to establish a chain of custody and that the breaks in the chain of custody allowed the bullet to be tampered with or substituted.   

A trial court's decision to admit or exclude evidence is afforded a great deal of discretion; thus, we review a trial court's ruling on admissibility or exclusion of evidence under an abuse of discretion standard.  
See Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997);
 Hall v. State
, 13 S.W.3d 115, 120 (Tex. App.—Fort Worth 2000) (applying abuse of discretion standard to chain of custody issue),
 pet. dism’d, improvidently granted
, 46 S.W.3d 264 (Tex. Crim. App. 2001).  We will uphold a trial court's evidentiary ruling if it is reasonably supported by the record and is correct under any theory of applicable law.  
Martin v. State
, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005);
 see Cantu v. State
, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992), 
cert. denied
, 509 U.S. 926 (1993).

The proponent of physical evidence has the burden of showing that the evidence is what it purports to be, which includes showing the chain of custody of the evidence. 
 See 
Tex. R. Evid.
 901(a).  Minor gaps in the chain of custody, however generally go to the weight and credibility of the evidence in question, not its admissibility.  
Lagrone v. State
, 942 S.W.2d 602, 617 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 917 (1997).  Proof of the beginning and end of the chain of custody generally will support admission of the evidence barring any showing of tampering or alteration.  
Hall
, 13 S.W.3d at 120.

Here, after Roberson was shot, the bullet was not removed from his shoulder for about two weeks.  The police department arranged for the bullet to be removed from Roberson’s shoulder at a medical center while Investigators David Taylor and Craig Allen were present.  The investigators testified that the doctor removed the bullet and placed it in a specimen jar.  Investigator Allen testified that he took the specimen jar to the police department, where he sealed it, marked it, and placed it in the department’s evidence room for storage.
(footnote: 5)  Investigator Allen testified that fourteen days after he placed the bullet in storage, he took the bullet to the evidence technician at the Tarrant County Medical Examiner’s Office, specifically to the area where police officers drop off evidence for processing.  Before the bullet was admitted into evidence, neither Investigator Allen nor any other witness testified to the end of the chain of custody, for example, that he retrieved the bullet from the evidence room on the day of trial, but this only means that the chain of custody was not conclusively proven.  
See Hall
, 13 S.W.3d at 120; 
see also Stoker v. State
, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989), 
cert. denied
, 498 U.S. 951 (1990) (stating that chain of custody is conclusively proven if an officer is able to identify that he seized the evidence, put an identification mark on it, placed it in the property room, and then retrieved the item being offered on the day of trial).  It is well settled that minor theoretical breaches in the chain of custody go to the weight rather than to the admissibility of the evidence.  
Hall
, 13 S.W.3d at 120
. 

But Thomas argues that because the bullet was in such good condition after passing through Roberson’s satchel, leather jacket, vest, and two shirts before lodging in his shoulder, someone in the chain of custody must have “fired [a bullet] into cotton and wiped the bullet off and put it in the specimen jar.”  The State’s expert testified that the bullet was in surprisingly good condition, but he never testified that “all bullets distort when they hit something, even water,” as Thomas contends.  This argument is not supported by the record before us.  Here, the trial court could have decided from the evidence that a reasonable juror could find that the bullet was authenticated or identified. 
 See Jackson v. State
, 968 S.W.2d 495, 499 (Tex. App.—Texarkana 1998, pet. ref’d); 
Pena v. State
, 864 S.W.2d 147, 152 (Tex. App.—Waco 1993, no pet.) (op. on reh’g).  Consequently, we hold that the trial court did not abuse its discretion by determining that the chain of custody was sufficient and by admitting the bullet into evidence.  
See Guzman
, 955 S.W.2d at 89
; see also Hall
, 13 S.W.3d at 120. We overrule Thomas’s second issue.

V.  Requested Jury Instructions Properly Denied

After both sides rested, Thomas’s defense counsel presented the trial court with several requested instructions to be included in the court’s charge, including an instruction on self-defense and instructions on the lesser included offenses of assault and reckless conduct.  The trial court denied Thomas’s requests for the lesser included offense instructions, but included an instruction on self-defense.   

In his third issue, Thomas contends that the trial court erred by denying his requested instructions on self-defense and the lesser included offenses of assault and reckless conduct.  Because the trial court did in fact include a self-defense instruction in its charge, we overrule the portion of Thomas’s third issue complaining of the absence of a self-defense instruction.  

We will address Thomas’s complaints concerning the trial court’s failure to give the lesser included offense instructions.  
We use a two-pronged test to determine whether a defendant is entitled to an instruction on a lesser included offense.  
Rousseau v. State
, 855 S.W.2d 666, 672-73 (Tex. Crim. App.), 
cert. denied
, 510 U.S. 919 (1993); 
Royster v. State
, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981).  First, the lesser included offense must be included within the proof necessary to establish the offense charged.  
Salinas v. State
, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); 
Rousseau
, 855 S.W.2d at 672-73; 
Royster
, 622 S.W.2d at 446.  Second, some evidence must exist in the record that would permit a jury to rationally find that if appellant is guilty, he is guilty only of the lesser offense.  
Salinas
, 163 S.W.3d at 741; 
Rousseau
, 855 S.W.2d at 672-73; 
Royster
, 622 S.W.2d at 446. 

Assault and reckless conduct are not per se lesser included offenses of aggravated assault.  
See Irving v. State
, 176 S.W.3d 842, 845 (Tex. Crim. App. 2005) (holding that assault was not a lesser included offense of aggravated assault in that case);
 Bell v. State
, 693 S.W.2d 434, 438 (Tex. Crim. App. 1985) (stating that reckless conduct is not necessarily a lesser included offense of each form of assault).  Instead, the determination of whether assault is a lesser included offense of aggravated assault must be made on a case-by-case basis.  
Bartholomew v. State
, 871 S.W.2d 210, 212 (Tex. Crim. App. 1994).  Thomas has not discussed or pointed this court to—and we have not located—evidence that if guilty, he is guilty only of assault or reckless conduct.
(footnote: 6)  Thus, we overrule Thomas’s third issue. 

VI.  Trial Court Bias

In his fourth issue, Thomas argues that the trial court erred by exhibiting bias for the State.  Thomas does not assert that the trial judge should have been disqualified; instead, he argues that the trial court erred by exhibiting bias for the State and that we should “reverse [his conviction] for plain error.” It is true that while sufficient bias can result in disqualification, it does so only in those cases in which the bias is shown to be of such a nature and to such an extent as to deny a defendant due process of law. 
 Westbrook v. State
, 29 S.W.3d 103, 121 (Tex. Crim. App. 2000), 
cert. denied
, 532 U.S. 944 (2001).  We have reviewed the record in its entirety, and we do not find that the trial court exhibited bias against Thomas so as to deny him due process of law.  In fact, the trial court allowed Thomas to fully develop a record through several bills of exceptions so that he could seek review of the trial court’s suppression rulings, and the court held a lengthy hearing on Thomas’s motion to suppress and even Thomas’s defense counsel what type of evidence would be helpful in determining the suppression issues.  Consequently, we overrule Thomas’s fourth issue.

VII.  Conclusion

Having overruled each of Thomas’s four issues, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL A: CAYCE, C.J.; HOLMAN and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: July 6, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P. 
47.4.

2:
The officers knew of at least one prior call from Thomas about process servers harassing him at his home. 

3:
Thomas’s trial counsel diligently asserted numerous grounds supporting Thomas’s suppression requests and succeeded in obtaining suppression of the documents police seized from Thomas’s attic and of all evidence seized before police obtained the search warrant.  

4:
During the punishment phase of trial, the State also introduced evidence of drugs and drug paraphernalia found during the search of Thomas’s house, and Thomas stated that he had “no objection” to this evidence.   

5:
Specifically, Investigator Allen testified that he put evidence tape on the specimen jar and marked it with his initials and the date.  He testified that he then put the specimen jar in a paper bag, sealed the bag, marked it with evidence tape, and put it in a secure evidence refrigerator.  At trial, he identified his initials and date on the paper bag.    

6:
Thomas does point to evidence showing that he was entitled to an instruction on self-defense, which he received.