COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| CONSTANTINO TORRES, | § | |
| | | No. 08-09-00266-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 210th District Court |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 20080D05471) |
| | § | |

**O P I N I O N**

A jury convicted Constantino Torres, Appellant, of three counts of indecency with a child by sexual contact, two counts of sexual assault of a child, and two counts of aggravated sexual assault of a child, and assessed punishment at 20 years' imprisonment for each count of sexual assault and one count of indecency, 99 years' imprisonment for each count of aggravated sexual assault, and 16 years' imprisonment for each remaining count of indecency. In two issues on appeal, Appellant complains of the admission of a lab report and buccal swabs. For the following reasons, we affirm.

**BACKGROUND**

The record presented here establishes that Appellant sexually abused three little girls. The first victim was his own stepdaughter, Jessica. Indeed, when Jessica was only seven years old, Appellant touched her vagina and forced her to touch his penis. As she grew older, Appellant made her perform oral sex on him. And when Jessica turned 13, Appellant vaginally penetrated her with his penis, raping her whenever he wanted. As a result, Jessica became pregnant with Appellant's child the following year. But despite her pregnancy, Appellant continued to have vaginal intercourse

with her.  The abuse only ended when Jessica made an outcry to her uncle.

Appellant also molested Ashley, one of Jessica's friends, when she was only 14 years old. On that occasion, Ashley was at Jessica's apartment when Appellant, using deception, pulled her into his bedroom, placed her on his bed, and rubbed her vagina with his hand.  Ashley pushed him away and left the apartment.  She later told a detective about the incident.

Appellant's third victim was Daisy.  She previously witnessed the touching and oral sex between Appellant and Jessica.  However, on one occasion, Appellant touched Daisy's breasts and forced her to touch his penis.  Daisy never told anyone about the incident.

## DISCUSSION

On appeal, Appellant alleges two issues for our review.  In Issue One, Appellant contends that the trial court erred by admitting a lab report over his confrontation objection, and in Issue Two, Appellant asserts that the trial court erred by admitting buccal swabs despite his objection that the chain of custody was insufficiently established.  We find no merit in either issue.

### Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006); *Martinez v. State*, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993).  If the trial court's decision fell within the zone of reasonable disagreement, it will be upheld. *Oprean*, 201 S.W.3d at 726; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).  But if the trial court acted arbitrarily and unreasonably, without reference to any guiding rules or principles, we will find an abuse of discretion. *Menchaca v. State*, 901 S.W.2d 640, 647 (Tex. App. – El Paso 1995, pet. ref'd).

### Lab Report

Appellant's first issue challenges the trial court's admission of a paternity lab report despite

his confrontation objection to the same. Specifically, Appellant contends that the State, in addition to producing the DNA analyst at trial, was also required to produce the technician that ran the automated genetic-analyzer machine at Orchid Cellmark, a private DNA testing lab, for cross-examination. We disagree.

*Applicable Law*

The confrontation clause of the Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. Therefore, as the Supreme Court held in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), an accused's right to confrontation is violated when a witness is permitted to relate out-of-court "testimonial" hearsay statements unless the declarant is unavailable and the accused had a prior opportunity to cross-examine the declarant. *Id*. at 59. However, *Crawford* only applies when the declarant does not testify at trial. *See id*. at 59. Indeed, when "the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Id*. at 59 n.9. We review *de novo* a trial court's ruling admitting evidence over a confrontation objection. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

*Application*

Here, the record reflects that the State sought to introduce a lab report that confirmed Appellant's paternity as the father of Jessica's child. Both authors of the report, Casey DuPont, a senior forensic scientist, and Dr. Wayne Hoffman, an associate laboratory director, testified at trial and were cross-examined by Appellant.

There, DuPont relayed that when she received the samples for testing, she placed the swabs into microcentrifuge tubes, labeled them, and sent them to automated technicians to place the swabs

into a testing device referred to as a robotic genetic-analyzer machine. The genetic-analyzer machine then generated a DNA profile, which DuPont analyzed. However, DuPont noted that when one of Appellant's samples failed to inject into the genetic-analyzer machine, no data was collected. Noting that was a common problem, DuPont explained that Appellant's sample was reinjected and that the machine was able to collect data that time.

To this testimony, Appellant raised a confrontation objection to the admission of the report, claiming that because no data was received when his sample was first injected into the genetic-analyzer machine, the machine was not working properly, and thus, the State was required to present the technician that operated and calibrated the machine, and that remedied the situation. However, the Supreme Court's opinion in *Melendez-Diaz v. Massachusetts*, --- U.S. ----, ----, 129 S.Ct. 2527, 2532, 174 L.Ed.2d 314 (2009), belies Appellant's assertion. There, the Court held that although analysts who analyze substances and prepare certificates of analyses or affidavits for test results are witnesses whom the defendant has the right to confront, that right of confrontation does not extend to technical analysts who merely calibrate and operate equipment: "[W]e do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or *accuracy of the testing device*, must appear in person as part of the prosecution's case." *Id*. at 2532 n.1 (emphasis added). Rather, only those that analyze the data and produce the report are subjected to a defendant's right to confront. *Id*. at 2532. Thus, we hold that Appellant's right to confrontation was not violated when the State did not produce the technician that operated and calibrated the genetic-analyzer machine. *See Settlemire v. State*, 323 S.W.3d 520, 522 (Tex. App. – Fort Worth 2010, pet. ref'd); *Hamilton v. State*, 300 S.W.3d 14, 21 (Tex. App. – San Antonio 2009, pet. ref'd); *Dreyer v. State*, No. 09-09-00422-CR, 2011 WL 193494, at *7-8 (Tex. App. – Beaumont Jan. 19, 2011, no pet.) (mem. op., not designated for publication); *Oliver v. State*,

No. 14-09-00690-CR, 2010 WL 3307391, at *3-4 (Tex. App. – Houston [14th Dist.] Aug. 24, 2010, no pet.) (op., not designated for publication) (cases holding same).

In short, the lab report admitted only contained DuPont's and Hoffman's analysis of the data and not any statements or assertions by the technicians that ran the machines. As DuPont and Hoffman both testified at trial and were subject to cross-examination, admission of the report did not violate Appellant's right to confrontation. Therefore, we find that the trial court did not abuse its discretion in admitting the lab report. Issue One is overruled.

**Chain of Custody**

In Issue Two, Appellant contends that the buccal swabs were inadmissible, alleging that the chain of custody was insufficiently established. Specifically, he contends that there was a gap in the chain based on allegations that the swabs were improperly processed at Orchid Cellmark. We disagree.

*Relevant Facts*

The record reflects that Officer Michelle Elyo collected two buccal swabs from Jessica, sealed the swabs in an envelope, labeled the envelope with the case number and her initials, and submitted the envelope to the property office. Similarly, Officer Sonia Bonilla collected two buccal swabs from Jessica's child, placed the sealed swabs in an envelope, initialed the same, and turned the envelope into the evidence locker. Finally, Officer Garcia testified that he collected two buccal swabs from Appellant, placed those swabs in an envelope, labeled the envelope with the case number and his initials, and turned it into the property office. Sometime later, Officer Garcia checked out all of the buccal swabs, which were sealed and in separate envelopes, packaged them, sealing them with evidence tape, initialed the package, and sent the package to Orchid Cellmark for DNA testing.

Orchid's evidence custodian received the package, inspected the external packaging, and

stored the package in its evidence room. The package stayed in the evidence room until it was assigned to Casey Dupont to conduct the testing. DuPont then removed the package from the evidence room, opened the same, and took out the buccal swabs. She then placed the swabs into tubes, labeled them, and logged them into Orchid's internal databases. Those swabs were then placed into a testing device – a robotic genetic-analyzer operated by technicians – that generated a DNA profile, and she analyzed the data. According to her testimony, she produced records that listed each individual that was responsible for performing each step at Orchid. The evidence was then returned to Officer Garcia in sealed envelopes, and he placed them in the property office.

*Applicable Law*

A chain of custody is sufficiently authenticated when the State establishes the beginning and the end of the chain, particularly when the chain ends at a laboratory. *Martinez v. State*, 186 S.W.3d 59, 62 (Tex. App. – Houston [1st Dist.] 2005, pet. ref'd). Therefore, unless there is proof of tampering or commingling, any gaps or theoretical breaches in the chain will not affect its admissibility. *Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997); *Gallegos v. State*, 776 S.W.2d 312, 315 (Tex. App. – Houston [1st Dist.] 1989, no pet.), *accord Martinez*, 186 S.W.3d at 62. Rather, those gaps go to the weight of the evidence. *Hall v. State*, 13 S.W.3d 115, 120 (Tex. App. – Fort Worth 2000), *pet. dism'd, improvidently granted*, 46 S.W.3d 264 (Tex. Crim. App. 2001). Indeed, a mere showing of a possibility of a theoretical gap is not sufficient to deny the admission of evidence. *Darrow v. State*, 504 S.W.2d 416, 417 (Tex. Crim. App. 1974); *Dossett v. State*, 216 S.W.3d 7, 18, 21 (Tex. App. – San Antonio 2006, pet. ref'd).

*Application*

Here, the beginning of the chain was established by the testimonies of Officers Bonilla, Elyo, and Garcia, all of whom testified that they took samples from Appellant, Jessica, and Jessica's child,

sealed those samples, and placed them into the property office. The middle of the chain was established by Officer Garcia's testimony that he collected those samples, packaged them, and sent them to Orchid, and by DuPont's testimony that noted those samples were received by Orchid and stored in its evidence room until she retrieved them to perform her DNA analysis. Lastly, there was testimony concerning the end of the chain – Officer Garcia received the samples back from Orchid and placed them in the property office. Each individual testified that they recognized the buccal samples proffered by the State, by their initials. We believe that such testimony was sufficient to satisfy the beginning and the end of the chain, and thus, the buccal swabs were properly admitted by the trial court. *See Stoker v. State*, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989) (providing that chain of custody is conclusively proven when the seizing officer testifies: (1) that he seized the physical evidence; (2) that he has identified his personal mark on the evidence; and (3) that he placed into and retrieved the item of evidence from the property room), *cert. denied*, 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990); *see also Dossett*, 216 S.W.3d at 21; *Williams v. State*, No. 02-06-00416-CR, 2008 WL 1867979, at *10-11 (Tex. App. – Fort Worth Apr. 24, 2008, pet. ref'd) (op., not designated for publication) (cases holding trial court did not abuse its discretion by admitting DNA evidence when beginning and end of the chain of custody was established).

Nevertheless, Appellant asserts that because his sample was injected twice, there exists the possibility that the sample may have been tampered with, inadvertently damaged, or compromised during its receipt. However, that is merely a theoretical gap that would require affirmative evidence of tampering or commingling, and it was Appellant's burden to present such affirmative evidence. *Dossett*, 216 S.W.3d at 17. As Appellant merely postulates without presenting any such evidence, his complaint, at most, goes to the weight of the evidence, not its admissibility. *See Darrow,* 504 S.W.2d at 417.

In sum, because the beginning and the end of the chain was sufficiently established, any theoretical gaps alleged by Appellant went to the weight of the evidence, not its admissibility. *Lagrone*, 942 S.W.2d at 617 (trial court did not abuse its discretion by admitting cocaine when beginning and end of chain of custody was established and there was no affirmative evidence of tampering although the evidence was kept in an evidence room for an extended period of time and had undergone prior forensic testing); *Dossett*, 216 S.W.3d at 21 (trial court did not abuse its discretion by admitting DNA test results when beginning and end of chain of custody was established and while there was speculation, there was no affirmative evidence that DNA test results from a moldy sexual assault kit had been commingled, contaminated, altered, or tampered with); *Williams*, 2008 WL 1867979, at *10-11 (trial court did not abuse its discretion by admitting swabs when beginning and end of chain of custody was established and no affirmative evidence was offered to substantiate claim for tampering or commingling). Therefore, the trial court properly admitted the buccal swabs into evidence despite Appellant's objection. Issue Two is overruled.

## CONCLUSION

Having overruled Appellant's issues, we affirm the trial court's judgment.


GUADALUPE RIVERA, Justice

July 27, 2011

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)