COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-06-416-CR

 

 

SAMUEL WILLIAMS                                                             APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 372ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                              OPINION

 

                                              ------------

I. INTRODUCTION 

Appellant Samuel Williams
appeals his conviction for sexual assault of a child.  In eleven points, appellant argues that the
evidence is legally and factually insufficient to support the conviction, the
trial court erred in admitting his written confession because it was involuntary
and not recorded by the investigating officer, the interview was not terminated
upon his request, and the trial court erred in admitting six vaginal swabs into
evidence.  We affirm. 








II. FACTUAL BACKGROUND

Appellant began to rebuild
his relationship with his daughter D.W. when she was twelve years old after
having no contact with her since she was two years old.  On July 25, 2005, when D.W. was fifteen years
old, appellant called and told her that he was coming to visit her.  When appellant arrived at the apartment of
D.W.=s mother, D.W. let him in and went to her room.  Appellant followed and sat next to her on the
bed.  D.W. testified that she became
uncomfortable when appellant asked her if she could take him away from his
girlfriend.  He then told D.W. to lie on
the floor as he instructed and showed her a condom.  When D.W. complied, appellant proceeded to
remove D.W=s shorts and
panties and then removed his own clothes before engaging in sexual intercourse
with her.

Shortly after, D.W.=s mother, Barbara M., returned home, and appellant, startled upon
hearing the key in the door, quickly hid in the closet where Barbara found him
half-naked.  She called the police.  After they arrived, she took D.W. to John
Peter Smith Hospital (JPS) where sexual assault nurse examiner Barbara Hynson
performed a rape examination of D.W. 
Hynson found numerous injuries consistent with blunt force trauma that
can be caused by sexual intercourse.   








On August 24, 2005, police
arrested appellant, and the investigating officer, Sergeant Steve Benjamin,
read appellant his Miranda rights in an interview room.  After a short, unrecorded interview,
appellant decided to give his version of the incident with D.W. in a written
statement.  Sergeant Benjamin left the
room and allowed appellant to write out his statement.  In his statement, appellant said that  D.W. seduced him into having sexual
intercourse and that he Agot caught
up in the moment.@ 

The State charged appellant
with sexual assault of a child.  After a
trial on November 14 through 17, 2006, a jury found him guilty.  Appellant pled Atrue@ to the
habitual offender notification, and the jury assessed his punishment at eighty
years= confinement.   

III. LEGAL AND FACTUAL
SUFFICIENCY

In appellant=s tenth and eleventh points, he argues that the evidence offered at
trial was legally and factually insufficient to support the verdict. 

A. Legal Sufficiency Standard of Review 








In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the prosecution in order to determine whether
any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play
to the responsibility of the trier of fact to resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  The trier of fact is the sole judge of the
weight and credibility of the evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App.
2000).  Thus, when performing a legal
sufficiency review, we may not re-evaluate the weight and credibility of the
evidence and substitute our judgment for that of the fact-finder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  Instead, we Adetermine whether the necessary inferences are reasonable based upon
the combined and cumulative force of all the evidence when viewed in the light
most favorable to the verdict.@  Hooper v. State, 214 S.W.3d
9, 16-17 (Tex. Crim. App. 2007).  We must
presume that the fact-finder resolved any conflicting inferences in favor of
the prosecution and defer to that resolution. 
Jackson, 443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235
S.W.3d at 778.

 

B. Factual Sufficiency Standard of Review








When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party. 
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s
determination is manifestly unjust.  Watson,
204 S.W.3d at 414-15, 417; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000).  To reverse under the second
ground, we must determine, with some objective basis in the record, that the
great weight and preponderance of all the evidence, though legally sufficient,
contradicts the verdict.  Watson,
204 S.W.3d at 417.








In determining whether the
evidence is factually insufficient to support a conviction that is nevertheless
supported by legally sufficient evidence, it is not enough that this court Aharbor a subjective level of reasonable doubt to overturn [the]
conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s resolution of a conflict in the evidence.  Id. 
We may not simply substitute our judgment for the fact-finder=s.  Johnson, 23 S.W.3d at
12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s determination of the weight to be given contradictory testimonial
evidence because resolution of the conflict Aoften turns on an evaluation of credibility and demeanor, and those
jurors were in attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at
8.  Thus, we must give due deference to
the fact-finder=s
determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@  Id. at 9.

An opinion addressing factual
sufficiency must include a discussion of the most important and relevant
evidence that supports the appellant=s complaint on appeal.  Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  

C. Analysis

Appellant claims that the
evidence the State provided failed to show that he actually caused the
penetration of D.W.=s female
sexual organ.  Specifically, he contends
that a reasonable jury could not have come to this conclusion because the
testimony of D.W. was ambiguous, lacked credibility, and was subject to outside
influence. 








To convict appellant of
sexual assault of a child, the State was required to prove that appellant
intentionally or knowingly caused the penetration of D.W.=s female sexual organ.  See Tex. Penal Code Ann. ' 22.011(a)(2)(A) (Vernon Supp. 2007).       The testimony of a sexual assault victim alone is sufficient to
support a conviction for sexual assault of a child.  Tex.
Code Crim. Proc. Ann. art. 38.07 (Vernon 2005); see Garcia v. State, 563
S.W.2d 925, 928 (Tex. Crim. App. 1978); Connell v. State, 233 S.W.3d 460,
466 (Tex. App.CFort Worth
2007, no pet.).  Courts give wide
latitude to the testimony given by a child victim of sexual abuse.  See Villalon v. State, 791 S.W.2d 130, 134
(Tex. Crim. App. 1990).  In addition,
there is no requirement that the victim=s testimony be corroborated by medical or physical evidence.  Garcia, 563 S.W.2d at 928; Kemple
v. State, 725 S.W.2d 483, 485 (Tex. App.CCorpus Christi 1987, no pet.). 








During trial, D.W. testified
that in July 2005, when she was fifteen years old, appellant came to visit her when
she was home alone.  When appellant
arrived, D.W. let him in and returned to her room where she was watching T.V.
and listening to the radio.  D.W.
testified that appellant followed her into the room and sat next to her on her
bed.  D.W. became uncomfortable after
appellant asked her if she could take him away from his girlfriend.  Following this question, appellant asked D.W.
to lie down on the floor.  He then showed
D.W. a condom and described what it was. 
D.W. testified that appellant then removed her shorts and panties, took
off his clothes, and initiated sexual intercourse with her.  D.W. stated that she felt pain during the
incident and that appellant told her that it would not hurt until after he was
finished.  When appellant heard D.W.=s mother arrive home, he stopped sexual intercourse with D.W. and
quickly hid in the bedroom closet.   

In addition to D.W.=s testimony of the incident, the jury heard corroborating testimony
from her mother, Barbara M., and sexual assault nurse examiner, Hynson.  Barbara=s testimony supports D.W.=s claim that she arrived home while the incident was taking
place.  Barbara testified that when she
arrived home, she heard D.W.=s closet door close, and she saw D.W. sitting on her bed scared and
crying.  When Barbara opened the closet
door, she discovered a man on all fours in the fetal position with no shirt on
and his shorts down past his knees. 
Barbara recognized appellant when he raised his head.  After a confrontation between Barbara and
appellant, Barbara called the police and then took her daughter to JPS.  Two days after the incident, appellant called
Barbara from jail.  Barbara asked him why
he had sex with their daughter, and he replied that D.W. had wanted to do
it.  During the call, appellant claimed
that he wanted to kill himself because of what had happened.  Barbara did not tell the police about the
phone call.   








At JPS, sexual assault nurse
examiner Barbara Hynson examined D.W. Hynson testified that D.W. told her that
appellant had sex with her, and upon completion of the examination, Hynson
found three injuries in D.W.=s genital area.  The report that
Hynson filed for the examination was consistent with her testimony that D.W.
had a blood blister on her clitoris and two hymenal tears.  She further testified that all three injuries
were consistent with injuries caused by the blunt force trauma from sexual
intercourse.   

As a result of the exam,
Hynson sent six vaginal swabs from D.W. to Orchid Cellmark Laboratory.  Technician Cassie Johnson testified that she
performed a Y-STR DNA test on the swabs to verify the presence of male
DNA.  The test specifically targets
markers on the Y chromosome, which is carried and inherited only by males in
the same lineage.  The test identifies
markers from the Y chromosome in sperm cells and epithelial cells.  Epithelial cells may be found in saliva,
blood, skin, or other cells present in the ejaculate that are not sperm
cells.  When the results from the vaginal
swabs were compared with the DNA sample from appellant, Johnson found no sperm
cells; however, one sample, swab 1.04, contained a partial profile of an
epithelial cell.  The partial profile
from swab 1.04 indicated that eleven of the seventeen traced markers matched
the sample taken from appellant.  From
these results, Johnson concluded that appellant and any male within his lineage
could not be excluded as a possible source of the DNA found on D.W.=s vaginal swab.     








The State also offered the
statement given by appellant after his arrest. 
According to the testimony of the investigating officer, Sergeant
Benjamin, appellant wrote and signed a statement on August 4, 2005.  In his statement, appellant claimed that he
rode his bike over to D.W.=s house on July 25, 2005.  When
he arrived, D.W. invited him into her bedroom where she then took off her
clothes and seduced him.  He wrote that
D.W. pulled him down on top of her and guided his penis into her vagina.  It was at this point that he realized what
was going on, interrupted sexual intercourse with D.W., and told her that this
was not right.  Appellant wrote that he
was about to leave when he heard Barbara arrive home.  Because he knew that he would be blamed, he
hid in the closet.      








In reviewing all of the
evidence, the testimony of D.W. alone was sufficient to support appellant=s conviction.  See Tex. Code. Crim. Proc. Ann. art. 38.07;
Garcia, 563 S.W.2d at 928 (finding that the victim=s testimony, standing alone, was sufficient evidence that the victim=s female organ was penetrated). 
Although D.W.=s testimony
did not have to be corroborated by additional medical or physical evidence, the
testimony of Barbara and Hynson supported D.W.=s account of the incident.  See Garcia, 563 S.W.2d at 928; Kemple, 725
S.W.2d at 485.  Barbara=s testimony corroborated the facts that appellant was at the apartment
at the time of the incident and was found hiding in the closet when Barbara
came home.  Additionally, Barbara
testified that two days after the incident, appellant admitted that he had had
sex with D.W.  Hynson=s testimony indicated that D.W. had sustained injuries to her genital
area that were consistent with injuries likely to occur from sexual intercourse.  The vaginal swabs taken by Hynson and
analyzed by Johnson provided evidence that male DNA was partially matched to
appellant=s epithelial
cell profile and therefore prevented him from being excluded as a possible
contributor of the DNA.  Finally,
appellant admitted in his written statement that penetration occurred.

Therefore, viewing all of the
evidence in a light most favorable to the verdict, we hold that a rational
trier of fact could have found beyond a reasonable doubt that appellant did
intentionally or knowingly penetrate the female sexual organ of D.W.  See Tex.
Penal Code Ann. '
22.011(a)(2)(A);  Jackson, 443
U.S. at 319, 99 S. Ct. at 2789.  When
viewing all of the evidence in a neutral light, we hold that the evidence
supporting the conviction is not so weak that a reasonable juror=s determination is clearly wrong and that any conflicting evidence
does not greatly outweigh the evidence in support of the conviction so that a
juror=s determination is unequivocally unjust.  See Watson, 204 S.W.3d at 414-15, 417; Drichas,
175 S.W.3d at 799; Johnson, 23 S.W.3d at 11.  We overrule appellant=s tenth and eleventh points. 








IV. Validity of the
Confession

In his first five points,
appellant argues that the trial court erred in denying his motion to suppress
his written statement and that his rights under the U.S. Constitution, Texas
Constitution, and the Texas Code of Criminal Procedure were violated because
his confession in the written statement was involuntary.  In his sixth and seventh points, appellant
argues that his rights under the U.S. and Texas Constitutions were violated
because the interview was not stopped at his request.  In appellant=s eighth point, he contends that the interview was not recorded as
required by the Texas Code of Criminal Procedure. 

A. The Motion to Suppress was Properly
Denied

1. Standard of Review








We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.  Amador v. State, 221
S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997).  In reviewing
the trial court=s decision,
we do not engage in our own factual review. 
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).  The
trial judge is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  Wiede v. State, 214 S.W.3d 17, 24-25
(Tex. Crim. App. 2007); State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim.
App. 2000), modified on other grounds by State v. Cullen, 195 S.W.3d 696
(Tex. Crim. App. 2006).  Therefore, we
give almost total deference to the trial court=s rulings on (1) questions of historical fact, even if the trial court=s determination of those facts was not based on an evaluation of
credibility and demeanor and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Amador, 221 S.W.3d at 673; Montanez
v. State, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); Johnson v.
State, 68 S.W.3d 644, 652‑53 (Tex. Crim. App. 2002).  But when application-of-law-to-fact questions
do not turn on the credibility and demeanor of the witnesses, we review the
trial court=s rulings on
those questions de novo.  Amador,
221 S.W.3d at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim.
App. 2005); Johnson, 68 S.W.3d at 652‑53.








Stated another way, when
reviewing the trial court=s ruling on
a motion to suppress, we must view the evidence in the light most favorable to
the trial court=s
ruling.  Wiede, 214 S.W.3d at 24; State
v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact
findings, we determine whether the evidence, when viewed in the light most
favorable to the trial court=s ruling, supports those fact findings.  Kelly, 204 S.W.3d at 818-19.  We then review the trial court=s legal ruling de novo unless its explicit fact findings that are
supported by the record are also dispositive of the legal ruling.  Id. at 819.

We must uphold the trial
court=s ruling if it is supported by the record and correct under any theory
of law applicable to the case even if the trial court gave the wrong reason for
its ruling.  State v. Stevens, 235
S.W.3d 736, 740  (Tex. Crim. App. 2007); Armendariz
v. State, 123 S.W.3d 401, 404 (Tex 
Crim. App. 2003), cert. denied, 541 U.S. 974 (2004). 

2. Applicable Law








The statement of the accused
may be used in evidence if it was freely and voluntarily made without
compulsion or persuasion.  Tex. Code. Crim. Proc. Ann. art. 38.21
(Vernon 2005).  In deciding whether a
statement was voluntary, we consider the totality of the circumstances in which
the statement was obtained.  Creager
v. State, 952 S.W.2d 852, 855 (Tex. Crim. App. 1997); Reed v. State, 59
S.W.3d 278, 281 (Tex. App.CFort Worth 2001, pet. ref=d).  A confession is involuntary
if circumstances show that the defendant=s will was Aoverborne@ by police coercion.  Creager,
952 S.W.2d at 856.  The defendant=s will may be Aoverborne@ if the record shows that there was Aofficial, coercive conduct of such a nature@ that a statement from the defendant was Aunlikely to have been the product of an essentially free and
unconstrained choice by its maker.@  Alvarado v. State, 912
S.W.2d 199, 211 (Tex. Crim. App. 1995); Frank v. State, 183 S.W.3d 63,
75 (Tex. App.CFort Worth
2005, pet. ref=d).  

3. Analysis

Appellant contends that his
confession was involuntarily given because he was under duress, and Sergeant
Benjamin coerced him by making improper promises.  According to the record, on August 24, 2005,
police arrested appellant on an outstanding warrant and transported him to the
Crimes Against Children Unit for questioning about the alleged sexual
assault.  Appellant was then taken to an
interview room at 12:55 p.m. where Sergeant Benjamin sat beside him and read
him the Miranda warnings as appellant followed along.  Sergeant Benjamin testified that appellant
said that he understood his rights and was willing to waive those rights and
make a statement.  Appellant then
initialed the top and bottom of the statement form that contained the Miranda
warnings, indicating that he understood and was waiving his rights.  








Sergeant Benjamin began the
interview by informing appellant of the sexual assault charges against him, and
appellant indicated that he would like to tell his side of the story.  Sergeant Benjamin asked appellant if he
needed to use the restroom or if he wanted a drink, and appellant was given
some water upon his request.  Never, at
any point in the interview, did appellant ask for an attorney.  Sergeant Benjamin then asked appellant to
write out his version of what had happened and left him alone to write his
statement.  Appellant filled in the
blanks of the statement form, including that he had completed eleven years of
schooling, and wrote his statement.  When
Sergeant Benjamin returned, he asked appellant if he would like to add anything
else about how he felt, and appellant proceeded to write out the final
paragraph of the statement.  Lastly,
appellant signed the statement and noted the interview=s end time of 2:00 p.m. at the bottom of the statement.  Furthermore, Sergeant Benjamin testified that
he never coerced appellant in any way, and he conducted the interview without
raising his voice or using physical intimidation.  Sergeant Benjamin also testified that
appellant was calm and  cooperative
throughout the interview.   








Based on the evidence
provided at the suppression hearing, the totality of the circumstances show
that appellant knowingly and voluntarily gave his statement after waiving his Miranda
rights.  The record does not show
that appellant was under duress or that Sergeant Benjamin coerced appellant by
using improper promises or undue physical or mental influence.  In addition, the interview was relatively
short, lasting approximately an hour, and was not taken in abnormally adverse
conditions.  The only request that
appellant had was granted to him, and at no point in the interview did
appellant request the presence of an attorney. 
Thus, the evidence supports the trial court=s ruling, and we hold that the trial court did not abuse its
discretion by denying appellant=s motion to suppress.  See
Creager, 952 S.W.2d at 855.  We
overrule appellant=s  points one through five. 

B. Request to Terminate the Interview

In his sixth and seventh
points, appellant argues that his rights under the Fifth and Fourteenth
Amendments of the U.S. Constitution and Article 1, Section 10 of the Texas
Constitution were violated because Sergeant Benjamin did not terminate the
interview after appellant requested that the interrogation stop.

In accordance with a
defendant=s right to
remain silent under Miranda, the defendant may invoke his right against
self-incrimination at any time during a custodial interrogation by requesting
that the interview be terminated.  Michigan
v. Mosley, 423 U.S. 96, 100-01, 96 S. Ct. 321, 325 (1975); Dowthitt v.
State, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996); Franks v. State,
90 S.W.3d 771, 786 (Tex. App.CFort Worth 2002, no pet.). 
Failure to cut off questioning after a defendant unambiguously invokes
his right to remain silent violates his rights and makes any subsequently
obtained statements inadmissable because they are involuntary.  Dowthitt, 931 S.W.2d at 257. 








Here, Sergeant Benjamin began
the interview by reading appellant his Miranda rights, and appellant indicated
that he understood his rights and wished to waive them.  The record does not show that appellant ever
specifically requested that the interview be terminated.  However, appellant argues that Sergeant
Benjamin=s testimony regarding his initial conversation with appellant
indicates that appellant did ask to terminate the interview.  Specifically, appellant points to Sergeant
Benjamin=s testimony that, A[v]erbally, I believe he [appellant] started off saying he wouldn=t do that, and we just proceeded to talk
a little while.@ [emphasis
added.]   








Appellant argues that the
statement, Ahe wouldn=t do that,@ indicates
that he did not want to participate in the interview; however, this statement,
if viewed as an attempt to invoke appellant=s Fifth Amendment right against self-incrimination, is not
sufficiently unambiguous so as to indicate a clear and unambiguous invocation
to terminate the interview.  See
Dowthitt, 931 S.W.2d at 257 (holding that the appellant=s statement, AI can=t say more than that. I need to rest,@ was found not to be an unambiguous invocation of his right to remain
silent).  Within the context of the
parties= conversation, it is just as likely that appellant=s statement was a response to the charges against him as a request to
invoke the rights that he had just waived. 
Furthermore, Sergeant Benjamin testified that after saying Ahe wouldn=t do that,@ appellant still gave a written statement and remained cooperative and
relaxed throughout the interview. 
Because we hold that there is no evidence in the record of an
unambiguous request to terminate the interview, we overrule appellant=s sixth and seventh points.    

C. Failure to Record the Oral Interview

In his eighth point,
appellant argues that his rights under the Texas Code of Criminal Procedure
were violated because the confession was not recorded.  Appellant argues that his written statement
was taken in violation of Article 38.22, section 3(a)(1) of the Texas Code of
Criminal Procedure because his interview with Sergeant Benjamin prior to the
written confession was not recorded.  Tex. Code Crim. Proc. Ann. art. 38.22, ' 3(a)(1) (Vernon 2005). 








To preserve a complaint for
our review, a party must have presented to the trial court a timely
request, objection, or motion that states the specific grounds for the desired
ruling if they are not apparent from the context of the request, objection, or
motion.  Tex. R. App. Proc. 33.1(a)(1); Mosley v. State,  983 S.W.2d 249, 265 (Tex. Crim. App. 1998)
(op. on reh=g), cert.
denied, 526 U.S. 1070, 119 S. Ct. 1466 (1990); Cabral v. State, 170
S.W.3d 761, 764 (Tex. App.CFort Worth 2005, pet. ref=d).  Except for complaints
involving systemic requirements or rights that are waivable only, all other
complaints, whether constitutional, statutory, otherwise, are forfeited for not
complying with Rule 33.1(a).  Mendez
v. State, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004).  The complaint on appeal must comport with the
complaint raised to the trial court.  Heidelberg v. State, 144 S.W.3d 535, 537
(Tex. Crim. App. 2004). 

In this case, appellant never
presented this particular ground to the trial court that he now brings on
appeal.  Instead, during the suppression
hearing, appellant argued that recording oral statements given prior to written
statements would be a better policy than the current one, which does not
require electronic recordings, because then there would be a way to preserve
the voluntariness of the statement.  At
no time did appellant argue that the failure to record the verbal exchange
prior to his written statement tainted the statement and consequently violated
the proper procedure for obtaining a confession.  Because appellant=s complaint on appeal does not comport with the complaint raised at
trial, we overrule appellant=s eighth point.  See Cabral,
170 S.W.3d at 764. 

V. Admissibility of DNA
Evidence

In his ninth point, appellant
argues that the trial court abused its discretion in admitting the six vaginal
swabs into evidence.

A. Preservation of Error








The State contends that
appellant did not preserve his point in this matter because, at the time he
objected to the admission of the swabs, the results of the DNA analysis
obtained from this evidence were already admitted into evidence as State=s Exhibit 2.  To preserve a
complaint for our review, a party must have presented to the trial court
a timely request, objection, or motion that states the specific grounds for the
desired ruling if they are not apparent from the context of the request,
objection, or motion.  Tex. R. App. Proc. 33.1(a)(1); Mosley,
 983 S.W.2d at 265. 








When DNA analyst Cassie
Johnson testified to the DNA results acquired from the vaginal swabs, appellant
objected to the admission of the DNA results based on authentication because
the State had not verified the chain of custody that showed how Johnson obtained
the swabs for testing.[1]  Appellant argued that the results were not
properly authenticated because Johnson testified that the materials she
received had been previously opened by the University of North Texas Health
Science Center (UNTHSC).  Because Johnson
could not ascertain what exactly had been done at UNTHSC or who had provided
the swabs to UNTHSC, appellant argued that there was a probability of
contamination and a weak link in the chain of custody.  To answer the objection, the State made a
proffer to Alink up@ the chain of custody with the witnesses who gathered the
evidence.  The trial court overruled
appellant=s objection,
admitted the DNA results into evidence, and allowed the State to Aconnect the dots@ in the
chain of custody.   

Subsequently, Nurse Hynson
testified that she had taken and packaged the vaginal swabs.  Hynson testified that she took four swabs
from D.W. as indicated on her examination chart.  However, she further testified that sometimes
she would take more than four swabs if necessary, but that she would change the
indication on the chart accordingly.  At
this point, appellant again objected to the swabs on authentication grounds
because there was a discrepancy in the number of swabs taken, four, and the
number of swabs tested, six, which indicated a level of uncertainty in the
chain of custody.  The trial court overruled
the objection.  

The record shows that
appellant objected to the authenticity of the DNA evidence throughout the
trial.  He objected when the results of
the DNA analysis from the swabs were admitted and when a discrepancy arose
regarding the number of vaginal swabs taken. 
Because appellant brought his authenticity complaint to the trial court=s attention, we hold that appellant preserved his authentication
complaint for our review.  See Tex. R. App. Proc. 33.1(a)(1); see
also Mosley, 983 S.W.2d at 265; Cabral, 170 S.W.3d at 764.

 

B. Evidentiary Ruling








We review a trial court=s decision to admit or exclude evidence under an abuse of discretion
standard, and we will uphold the court=s decision as long as it lies within the zone of reasonable
disagreement.  Burden v. State, 55
S.W.3d 608, 615 (Tex. Crim. App. 2001); Montgomery v. State, 810 S.W.2d
372, 391 (Tex. Crim. App. 1990) (op. on reh=g); West v. State, 121 S.W.3d 95, 100 (Tex. App.CFort Worth 2003, pet. ref=d).  We will uphold the trial
court=s evidentiary ruling if it is reasonably supported by the record and
is correct under any theory of law.  West,
121 S.W.3d at 100. 








To admit the results of
scientific testing, such as DNA testing, a proper chain of custody must be
established.  See Tex. R. Evid. 901; Durrett v. State,
36 S.W.3d 205, 208 (Tex. App.CHouston [14th Dist.] 2001, no pet.); Avila v. State, 18 S.W.3d
736, 739 (Tex. App.CSan Antonio
2000, no pet.); Astalas v. State, No. 02-02-00237-CR, 2004 WL 2320362,
at *3 (Tex. App.CFort Worth
Oct. 14, 2004, no pet.) (mem. op., not designated for publication).  While the rules of evidence do not
specifically address the issue of chain of custody, Rule 901(a) states that the
authentication or identification of an item for admissibility is satisfied by
sufficient evidence that supports a finding that the item in question is what
its proponent claims.  Tex. R. Evid. 901(a); Dossett v.
State, 216 S.W.3d 7, 18 (Tex. App.CSan Antonio 2006, pet. ref=d); Silva v. State, 989 S.W.2d 64, 67 (Tex. App.CSan Antonio 1998, pet. ref=d).  Authentication or
identification may be determined by different methods, including testimony from
a witness with knowledge that Aa matter is what it is claimed to be.@  Tex. R. Evid. 901(b)(1); Kingsbury v. State, 14 S.W.3d
405, 407 (Tex. App.CWaco 2000,
no pet.); Garner v. State, 939 S.W.2d 802, 805 (Tex. App.CFort Worth 1997, pet. ref=d).  A court will not abuse its
discretion by admitting evidence based on a belief that a reasonable juror
could find that the evidence has been authenticated or identified properly.  Avila, 18 S.W.3d at 739; see also
Pondexter v. State, 942 S.W.2d 577, 586 (Tex. Crim. App. 1996), cert.
denied, 522 U.S. 825 (1997).








Proof of the chain of custody
goes to the weight of the evidence and not its admissibility.  Lagrone v. State, 942 S.W.2d 602, 617
(Tex. Crim. App. 1997), cert. denied, 522 U.S. 917 (1997); Garner, 939
S.W.2d at 805.  Proof that validates the
beginning and the end of the chain of custody will support the admission of
evidence, barring any evidence of tampering or alteration.  Stoker v. State, 788 S.W.2d 1, 10
(Tex. Crim. App. 1989), cert. denied, 498 U.S. 951 (1990); Hall v.
State, 13 S.W.3d 115, 120 (Tex. App.CFort Worth 2000), pet. dism=d, improvidently granted, 46 S.W.3d
264 (Tex. Crim. App. 2001).  Unless there
is proof of tampering or commingling involved with the evidence, gaps or
theoretical breaches in the chain of custody will not affect the admissibility.  Lagrone, 942 S.W.2d at 617; Silva, 989
S.W.2d at 68.  If the appellant raises
any minor theoretical breaches in the chain of custody, they will also go to
the weight rather than the admissibility of the evidence.  DeLeon v. State, 505 S.W.2d 288, 289
(Tex. Crim. App. 1974); Hall, 13 S.W.3d at 120.  Additionally, showing a possibility of
tampering or commingling is not sufficient to deny admission of the
evidence.  Darrow v. State, 504
S.W.2d 416, 417 (Tex. Crim. App. 1974); Dossett, 216 S.W.3d at 18. 

Here, the State provided
evidence to validate the beginning and the end of the chain of custody for the
vaginal swabs.  The State first offered
Johnson=s testimony that she was the analyst who performed the DNA testing on
the swabs.  Johnson testified that she
received, directly from the Fort Worth Police Department, six vaginal swabs and
two buccal swabs along with other items involved with appellant=s case.  She also testified that
she knew the items had previously been reviewed by UNTHSC because the evidence
tape on the box had been opened.  Johnson
stated that she was not sure what tests the lab at UNTHSC ran on the swabs, but
all of her tests ran properly and without signs of contamination or
tampering.  Johnson later testified that
she believed that UNTHSC tested the samples for seminal fluid.  








The State then provided
testimony from Hynson to establish the beginning of the chain of custody.  Hynson testified that she was responsible for
obtaining the vaginal swabs from D.W., and that after she took the swabs, she
packaged and labeled the evidence according to the proper standards.[2]   After Hynson initialed everything in the
evidence box, the evidence was placed in a safe to be picked up by the Fort
Worth Police Department.  Hynson also
testified that she would have taken more than four swabs if there was bleeding
from any of the injuries.  

 Appellant contends that the testimony from
Hynson provides affirmative proof that the swabs were tampered with because she
testified that there were only four vaginal swabs taken, but Orchid Cellmark
received six vaginal swabs.  Moreover,
appellant argues that because Johnson was unaware of the specific tests
performed at UNTHSC before she received the evidence, there was additional
proof of tampering or commingling. 








  The discrepancy in the number of swabs taken
is not affirmative proof that the evidence was tampered with or contaminated.
Hynson testified that it was common procedure for her to take more than four
swabs if the injuries were bleeding, as they were in this case.  Furthermore, the possible gap in the chain of
custody concerning what tests did or did not take place at UNTHSC represents a
minor theoretical breach in the chain of custody that goes towards the weight
of the evidence and not its admissibility. 
See Dossett, 216 S.W.3d at 21; Hall, 13 S.W.3d at
120.  At most, appellant has shown a
possibility of tampering or commingling, which is insufficient to exclude the
evidence.  Stoker, 788 S.W.2d at
10; Dossett, 216 S.W.3d at 21. 

Because there was no
affirmative evidence offered to substantiate a claim for tampering or
commingling of the swabs, the trial court did not abuse its discretion in
determining that a reasonable juror could find that the swabs were properly
authenticated.  See Dossett, 216
S.W.3d at 21.  Additionally, the State
substantiated the beginning and the end of the chain of custody for the swabs.  See Hall, 13 S.W.3d at 120; Dossett, 216
S.W.3d at 21.  We hold that the trial
court did not abuse its discretion in admitting the evidence.  See Burden, 55 S.W.3d at 615; Deleon, 505
S.W.2d at 289; Hall, 13 S.W.3d at 121. 
We overrule appellant=s ninth point. 

 

 

 

 








Conclusion

Having overruled all of
appellant=s points, we
affirm the trial court=s judgment.                     

 

TERRIE
LIVINGSTON

JUSTICE

 

PANEL A:   CAYCE,
C.J.; LIVINGSTON and MCCOY, JJ.

 

DO NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED: April 24,
2008

 

 











[1]The DNA results, which were
obtained from the vaginal swabs, were offered into evidence as State=s Exhibit 2.  The actual vaginal swabs were later offered
into evidence as State=s Exhibit 3C.  





[2]After collecting the swabs, Hynson
put the swabs into a sealed air dryer that preserves the DNA.  She remained with the samples as they dried
for twenty to thirty minutes.  Once dry,
the swabs were packaged, sealed, labeled, and placed into another box, which
was also sealed and labeled.  The box was
then placed in a police evidence bag, which is also sealed and labeled, and
dropped into a safe for the Fort Worth Police Department to pick up.  Hynson testified that she initialed each of
the labels after she identified and labeled the source of the evidence.  She also testified that she was with the
swabs until they were dropped in the evidence safe.