

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-06-416-CR

SAMUEL WILLIAMS                                          APPELLANT

V.

THE STATE OF TEXAS                                          STATE

------------

### FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

### I. INTRODUCTION

Appellant Samuel Williams appeals his conviction for sexual assault of a child. In eleven points, appellant argues that the evidence is legally and factually insufficient to support the conviction, the trial court erred in admitting his written confession because it was involuntary and not recorded by the investigating officer, the interview was not terminated upon his request, and the trial court erred in admitting six vaginal swabs into evidence. We affirm.

## II. FACTUAL BACKGROUND

Appellant began to rebuild his relationship with his daughter D.W. when she was twelve years old after having no contact with her since she was two years old. On July 25, 2005, when D.W. was fifteen years old, appellant called and told her that he was coming to visit her. When appellant arrived at the apartment of D.W.'s mother, D.W. let him in and went to her room. Appellant followed and sat next to her on the bed. D.W. testified that she became uncomfortable when appellant asked her if she could take him away from his girlfriend. He then told D.W. to lie on the floor as he instructed and showed her a condom. When D.W. complied, appellant proceeded to remove D.W's shorts and panties and then removed his own clothes before engaging in sexual intercourse with her.

Shortly after, D.W.'s mother, Barbara M., returned home, and appellant, startled upon hearing the key in the door, quickly hid in the closet where Barbara found him half-naked. She called the police. After they arrived, she took D.W. to John Peter Smith Hospital (JPS) where sexual assault nurse examiner Barbara Hynson performed a rape examination of D.W. Hynson found numerous injuries consistent with blunt force trauma that can be caused by sexual intercourse.

2

On August 24, 2005, police arrested appellant, and the investigating officer, Sergeant Steve Benjamin, read appellant his *Miranda* rights in an interview room. After a short, unrecorded interview, appellant decided to give his version of the incident with D.W. in a written statement. Sergeant Benjamin left the room and allowed appellant to write out his statement. In his statement, appellant said that D.W. seduced him into having sexual intercourse and that he "got caught up in the moment."

The State charged appellant with sexual assault of a child. After a trial on November 14 through 17, 2006, a jury found him guilty. Appellant pled "true" to the habitual offender notification, and the jury assessed his punishment at eighty years' confinement.

### III. LEGAL AND FACTUAL SUFFICIENCY

In appellant's tenth and eleventh points, he argues that the evidence offered at trial was legally and factually insufficient to support the verdict.

**A. Legal Sufficiency Standard of Review**

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443

3

U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We must presume that the fact-finder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

**B. Factual Sufficiency Standard of Review**

4

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust. *Watson*, 204 S.W.3d at 414-15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the fact-

5

finder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, we must give due deference to the fact-finder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9.

An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

**C. Analysis**

Appellant claims that the evidence the State provided failed to show that he actually caused the penetration of D.W.'s female sexual organ. Specifically, he contends that a reasonable jury could not have come to this conclusion because the testimony of D.W. was ambiguous, lacked credibility, and was subject to outside influence.

To convict appellant of sexual assault of a child, the State was required to prove that appellant intentionally or knowingly caused the penetration of

D.W.'s female sexual organ.  *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(A) (Vernon Supp. 2007).  The testimony of a sexual assault victim alone is sufficient to support a conviction for sexual assault of a child.  TEX. CODE CRIM. PROC. ANN. art. 38.07 (Vernon 2005); *see Garcia v. State,* 563 S.W.2d 925, 928 (Tex. Crim. App. 1978); *Connell v. State,* 233 S.W.3d 460*,* 466 (Tex. App.—Fort Worth 2007, no pet.).  Courts give wide latitude to the testimony given by a child victim of sexual abuse.  *See Villalon v. State,* 791 S.W.2d 130, 134 (Tex. Crim. App. 1990).  In addition, there is no requirement that the victim's testimony be corroborated by medical or physical evidence.  *Garcia,* 563 S.W.2d at 928; *Kemple v. State,* 725 S.W.2d 483, 485 (Tex. App.—Corpus Christi 1987, no pet.).

During trial, D.W. testified that in July 2005, when she was fifteen years old, appellant came to visit her when she was home alone.  When appellant arrived, D.W. let him in and returned to her room where she was watching T.V. and listening to the radio.  D.W. testified that appellant followed her into the room and sat next to her on her bed.  D.W. became uncomfortable after appellant asked her if she could take him away from his girlfriend.  Following this question, appellant asked D.W. to lie down on the floor.  He then showed D.W. a condom and described what it was.  D.W. testified that appellant then removed her shorts and panties, took off his clothes, and initiated sexual

7

intercourse with her. D.W. stated that she felt pain during the incident and that appellant told her that it would not hurt until after he was finished. When appellant heard D.W.'s mother arrive home, he stopped sexual intercourse with D.W. and quickly hid in the bedroom closet.

In addition to D.W.'s testimony of the incident, the jury heard corroborating testimony from her mother, Barbara M., and sexual assault nurse examiner, Hynson. Barbara's testimony supports D.W.'s claim that she arrived home while the incident was taking place. Barbara testified that when she arrived home, she heard D.W.'s closet door close, and she saw D.W. sitting on her bed scared and crying. When Barbara opened the closet door, she discovered a man on all fours in the fetal position with no shirt on and his shorts down past his knees. Barbara recognized appellant when he raised his head. After a confrontation between Barbara and appellant, Barbara called the police and then took her daughter to JPS. Two days after the incident, appellant called Barbara from jail. Barbara asked him why he had sex with their daughter, and he replied that D.W. had wanted to do it. During the call, appellant claimed that he wanted to kill himself because of what had happened. Barbara did not tell the police about the phone call.

At JPS, sexual assault nurse examiner Barbara Hynson examined D.W. Hynson testified that D.W. told her that appellant had sex with her, and upon

8

completion of the examination, Hynson found three injuries in D.W.'s genital area. The report that Hynson filed for the examination was consistent with her testimony that D.W. had a blood blister on her clitoris and two hymenal tears. She further testified that all three injuries were consistent with injuries caused by the blunt force trauma from sexual intercourse.

As a result of the exam, Hynson sent six vaginal swabs from D.W. to Orchid Cellmark Laboratory. Technician Cassie Johnson testified that she performed a Y-STR DNA test on the swabs to verify the presence of male DNA. The test specifically targets markers on the Y chromosome, which is carried and inherited only by males in the same lineage. The test identifies markers from the Y chromosome in sperm cells and epithelial cells. Epithelial cells may be found in saliva, blood, skin, or other cells present in the ejaculate that are not sperm cells. When the results from the vaginal swabs were compared with the DNA sample from appellant, Johnson found no sperm cells; however, one sample, swab 1.04, contained a partial profile of an epithelial cell. The partial profile from swab 1.04 indicated that eleven of the seventeen traced markers matched the sample taken from appellant. From these results, Johnson concluded that appellant and any male within his lineage could not be excluded as a possible source of the DNA found on D.W.'s vaginal swab.

9

The State also offered the statement given by appellant after his arrest. According to the testimony of the investigating officer, Sergeant Benjamin, appellant wrote and signed a statement on August 4, 2005. In his statement, appellant claimed that he rode his bike over to D.W.'s house on July 25, 2005. When he arrived, D.W. invited him into her bedroom where she then took off her clothes and seduced him. He wrote that D.W. pulled him down on top of her and guided his penis into her vagina. It was at this point that he realized what was going on, interrupted sexual intercourse with D.W., and told her that this was not right. Appellant wrote that he was about to leave when he heard Barbara arrive home. Because he knew that he would be blamed, he hid in the closet.

In reviewing all of the evidence, the testimony of D.W. alone was sufficient to support appellant's conviction. *See* TEX. CODE. CRIM. PROC. ANN. art. 38.07; *Garcia*, 563 S.W.2d at 928 (finding that the victim's testimony, standing alone, was sufficient evidence that the victim's female organ was penetrated). Although D.W.'s testimony did not have to be corroborated by additional medical or physical evidence, the testimony of Barbara and Hynson supported D.W.'s account of the incident. *See Garcia,* 563 S.W.2d at 928; *Kemple,* 725 S.W.2d at 485. Barbara's testimony corroborated the facts that appellant was at the apartment at the time of the incident and was found hiding

10

in the closet when Barbara came home. Additionally, Barbara testified that two days after the incident, appellant admitted that he had had sex with D.W. Hynson's testimony indicated that D.W. had sustained injuries to her genital area that were consistent with injuries likely to occur from sexual intercourse. The vaginal swabs taken by Hynson and analyzed by Johnson provided evidence that male DNA was partially matched to appellant's epithelial cell profile and therefore prevented him from being excluded as a possible contributor of the DNA. Finally, appellant admitted in his written statement that penetration occurred.

Therefore, viewing all of the evidence in a light most favorable to the verdict, we hold that a rational trier of fact could have found beyond a reasonable doubt that appellant did intentionally or knowingly penetrate the female sexual organ of D.W. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(A); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. When viewing all of the evidence in a neutral light, we hold that the evidence supporting the conviction is not so weak that a reasonable juror's determination is clearly wrong and that any conflicting evidence does not greatly outweigh the evidence in support of the conviction so that a juror's determination is unequivocally unjust. *See Watson*, 204 S.W.3d at 414-15, 417; *Drichas,* 175 S.W.3d at 799; *Johnson,* 23 S.W.3d at 11. We overrule appellant's tenth and eleventh points.

11

## IV. Validity of the Confession

In his first five points, appellant argues that the trial court erred in denying his motion to suppress his written statement and that his rights under the U.S. Constitution, Texas Constitution, and the Texas Code of Criminal Procedure were violated because his confession in the written statement was involuntary. In his sixth and seventh points, appellant argues that his rights under the U.S. and Texas Constitutions were violated because the interview was not stopped at his request. In appellant's eighth point, he contends that the interview was not recorded as required by the Texas Code of Criminal Procedure.

### A. The Motion to Suppress was Properly Denied

#### 1. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855

12

(Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652-53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818-19. We then review the trial court's legal ruling de novo unless its explicit fact

13

findings that are supported by the record are also dispositive of the legal ruling. *Id*. at 819.

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

**2. Applicable Law**

The statement of the accused may be used in evidence if it was freely and voluntarily made without compulsion or persuasion. TEX. CODE. CRIM. PROC. ANN. art. 38.21 (Vernon 2005). In deciding whether a statement was voluntary, we consider the totality of the circumstances in which the statement was obtained. *Creager v. State,* 952 S.W.2d 852, 855 (Tex. Crim. App. 1997); *Reed v. State,* 59 S.W.3d 278, 281 (Tex. App.—Fort Worth 2001, pet. ref'd). A confession is involuntary if circumstances show that the defendant's will was "overborne" by police coercion. *Creager,* 952 S.W.2d at 856. The defendant's will may be "overborne" if the record shows that there was "official, coercive conduct of such a nature" that a statement from the defendant was "unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado v. State,* 912 S.W.2d 199, 211

14

(Tex. Crim. App. 1995); *Frank v. State,* 183 S.W.3d 63, 75 (Tex. App.—Fort Worth 2005, pet. ref'd).

### 3. Analysis

Appellant contends that his confession was involuntarily given because he was under duress, and Sergeant Benjamin coerced him by making improper promises. According to the record, on August 24, 2005, police arrested appellant on an outstanding warrant and transported him to the Crimes Against Children Unit for questioning about the alleged sexual assault. Appellant was then taken to an interview room at 12:55 p.m. where Sergeant Benjamin sat beside him and read him the *Miranda* warnings as appellant followed along. Sergeant Benjamin testified that appellant said that he understood his rights and was willing to waive those rights and make a statement. Appellant then initialed the top and bottom of the statement form that contained the *Miranda* warnings, indicating that he understood and was waiving his rights.

Sergeant Benjamin began the interview by informing appellant of the sexual assault charges against him, and appellant indicated that he would like to tell his side of the story. Sergeant Benjamin asked appellant if he needed to use the restroom or if he wanted a drink, and appellant was given some water upon his request. Never, at any point in the interview, did appellant ask for an attorney. Sergeant Benjamin then asked appellant to write out his version of

15

what had happened and left him alone to write his statement. Appellant filled in the blanks of the statement form, including that he had completed eleven years of schooling, and wrote his statement. When Sergeant Benjamin returned, he asked appellant if he would like to add anything else about how he felt, and appellant proceeded to write out the final paragraph of the statement. Lastly, appellant signed the statement and noted the interview's end time of 2:00 p.m. at the bottom of the statement. Furthermore, Sergeant Benjamin testified that he never coerced appellant in any way, and he conducted the interview without raising his voice or using physical intimidation. Sergeant Benjamin also testified that appellant was calm and cooperative throughout the interview.

Based on the evidence provided at the suppression hearing, the totality of the circumstances show that appellant knowingly and voluntarily gave his statement after waiving his *Miranda* rights. The record does not show that appellant was under duress or that Sergeant Benjamin coerced appellant by using improper promises or undue physical or mental influence. In addition, the interview was relatively short, lasting approximately an hour, and was not taken in abnormally adverse conditions. The only request that appellant had was granted to him, and at no point in the interview did appellant request the presence of an attorney. Thus, the evidence supports the trial court's ruling,

and we hold that the trial court did not abuse its discretion by denying appellant's motion to suppress. *See Creager,* 952 S.W.2d at 855. We overrule appellant's points one through five.

**B. Request to Terminate the Interview**

In his sixth and seventh points, appellant argues that his rights under the Fifth and Fourteenth Amendments of the U.S. Constitution and Article 1, Section 10 of the Texas Constitution were violated because Sergeant Benjamin did not terminate the interview after appellant requested that the interrogation stop.

In accordance with a defendant's right to remain silent under *Miranda*, the defendant may invoke his right against self-incrimination at any time during a custodial interrogation by requesting that the interview be terminated. *Michigan v. Mosley*, 423 U.S. 96, 100-01, 96 S. Ct. 321, 325 (1975); *Dowthitt v. State*, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996); *Franks v. State,* 90 S.W.3d 771, 786 (Tex. App.—Fort Worth 2002, no pet.). Failure to cut off questioning after a defendant unambiguously invokes his right to remain silent violates his rights and makes any subsequently obtained statements inadmissable because they are involuntary. *Dowthitt,* 931 S.W.2d at 257.

Here, Sergeant Benjamin began the interview by reading appellant his *Miranda* rights, and appellant indicated that he understood his rights and wished

17

to waive them. The record does not show that appellant ever specifically requested that the interview be terminated. However, appellant argues that Sergeant Benjamin's testimony regarding his initial conversation with appellant indicates that appellant did ask to terminate the interview. Specifically, appellant points to Sergeant Benjamin's testimony that, "[v]erbally, *I believe he [appellant] started off saying he wouldn't do that,* and we just proceeded to talk a little while." [emphasis added.]

Appellant argues that the statement, "he wouldn't do that," indicates that he did not want to participate in the interview; however, this statement, if viewed as an attempt to invoke appellant's Fifth Amendment right against self-incrimination, is not sufficiently unambiguous so as to indicate a clear and unambiguous invocation to terminate the interview. *See Dowthitt,* 931 S.W.2d at 257 (holding that the appellant's statement, "I can't say more than that. I need to rest," was found not to be an unambiguous invocation of his right to remain silent). Within the context of the parties' conversation, it is just as likely that appellant's statement was a response to the charges against him as a request to invoke the rights that he had just waived. Furthermore, Sergeant Benjamin testified that after saying "he wouldn't do that," appellant still gave a written statement and remained cooperative and relaxed throughout the interview. Because we hold that there is no evidence in the record of an

18

unambiguous request to terminate the interview, we overrule appellant's sixth and seventh points.

**C. Failure to Record the Oral Interview**

In his eighth point, appellant argues that his rights under the Texas Code of Criminal Procedure were violated because the confession was not recorded. Appellant argues that his written statement was taken in violation of Article 38.22, section 3(a)(1) of the Texas Code of Criminal Procedure because his interview with Sergeant Benjamin prior to the written confession was not recorded. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(1) (Vernon 2005).

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. TEX. R. APP. PROC. 33.1(a)(1); *Mosley v. State,* 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070, 119 S. Ct. 1466 (1990); *Cabral v. State,* 170 S.W.3d 761, 764 (Tex. App.—Fort Worth 2005, pet. ref'd). Except for complaints involving systemic requirements or rights that are waivable only, all other complaints, whether constitutional, statutory, otherwise, are forfeited for not complying with Rule 33.1(a). *Mendez v. State,* 138 S.W.3d 334, 342 (Tex. Crim. App.

2004).  The complaint on appeal must comport with the complaint raised to the trial court.  *Heidelberg v. State,* 144 S.W.3d 535, 537 (Tex. Crim. App. 2004).

In this case, appellant never presented this particular ground to the trial court that he now brings on appeal.  Instead, during the suppression hearing, appellant argued that recording oral statements given prior to written statements would be a better policy than the current one, which does not require electronic recordings, because then there would be a way to preserve the voluntariness of the statement.  At no time did appellant argue that the failure to record the verbal exchange prior to his written statement tainted the statement and consequently violated the proper procedure for obtaining a confession.  Because appellant's complaint on appeal does not comport with the complaint raised at trial, we overrule appellant's eighth point.  *See Cabral,* 170 S.W.3d at 764.

## V. Admissibility of DNA Evidence

In his ninth point, appellant argues that the trial court abused its discretion in admitting the six vaginal swabs into evidence.

### A. Preservation of Error

The State contends that appellant did not preserve his point in this matter because, at the time he objected to the admission of the swabs, the results of the DNA analysis obtained from this evidence were already admitted into

evidence as State's Exhibit 2.  To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  TEX. R. APP. PROC. 33.1(a)(1); *Mosley,* 983 S.W.2d at 265.

When DNA analyst Cassie Johnson testified to the DNA results acquired from the vaginal swabs, appellant objected to the admission of the DNA results based on authentication because the State had not verified the chain of custody that showed how Johnson obtained the swabs for testing.[1]  Appellant argued that the results were not properly authenticated because Johnson testified that the materials she received had been previously opened by the University of North Texas Health Science Center (UNTHSC).  Because Johnson could not ascertain what exactly had been done at UNTHSC or who had provided the swabs to UNTHSC, appellant argued that there was a probability of contamination and a weak link in the chain of custody.  To answer the objection, the State made a proffer to "link up" the chain of custody with the witnesses who gathered the evidence.  The trial court overruled appellant's

---

[1] The DNA results, which were obtained from the vaginal swabs, were offered into evidence as State's Exhibit 2.  The actual vaginal swabs were later offered into evidence as State's Exhibit 3C.

21

objection, admitted the DNA results into evidence, and allowed the State to "connect the dots" in the chain of custody.

Subsequently, Nurse Hynson testified that she had taken and packaged the vaginal swabs. Hynson testified that she took four swabs from D.W. as indicated on her examination chart. However, she further testified that sometimes she would take more than four swabs if necessary, but that she would change the indication on the chart accordingly. At this point, appellant again objected to the swabs on authentication grounds because there was a discrepancy in the number of swabs taken, four, and the number of swabs tested, six, which indicated a level of uncertainty in the chain of custody. The trial court overruled the objection.

The record shows that appellant objected to the authenticity of the DNA evidence throughout the trial. He objected when the results of the DNA analysis from the swabs were admitted and when a discrepancy arose regarding the number of vaginal swabs taken. Because appellant brought his authenticity complaint to the trial court's attention, we hold that appellant preserved his authentication complaint for our review. *See* TEX. R. APP. PROC. 33.1(a)(1); *see also Mosley,* 983 S.W.2d at 265; *Cabral,* 170 S.W.3d at 764.

**B. Evidentiary Ruling**

22

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard, and we will uphold the court's decision as long as it lies within the zone of reasonable disagreement. *Burden v. State,* 55 S.W.3d 608, 615 (Tex. Crim. App. 2001)*; Montgomery v. State,* 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g); *West v. State,* 121 S.W.3d 95, 100 (Tex. App.—Fort Worth 2003, pet. ref'd).  We will uphold the trial court's evidentiary ruling if it is reasonably supported by the record and is correct under any theory of law.  *West,* 121 S.W.3d at 100*.*

To admit the results of scientific testing, such as DNA testing, a proper chain of custody must be established.  *See* TEX. R. EVID. 901; *Durrett v. State,* 36 S.W.3d 205, 208 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *Avila v. State,* 18 S.W.3d 736, 739 (Tex. App.—San Antonio 2000, no pet.); *Astalas v. State*, No. 02-02-00237-CR, 2004 WL 2320362, at *3 (Tex. App.—Fort Worth Oct. 14, 2004, no pet.) (mem. op., not designated for publication). While the rules of evidence do not specifically address the issue of chain of custody, Rule 901(a) states that the authentication or identification of an item for admissibility is satisfied by sufficient evidence that supports a finding that the item in question is what its proponent claims.  TEX. R. EVID. 901(a); *Dossett v. State,* 216 S.W.3d 7, 18 (Tex. App.—San Antonio 2006, pet. ref'd)*; Silva v. State,* 989 S.W.2d 64, 67 (Tex. App.—San Antonio 1998, pet. ref'd).

23

Authentication or identification may be determined by different methods, including testimony from a witness with knowledge that "a matter is what it is claimed to be."  TEX. R. EVID. 901(b)(1); *Kingsbury v. State,* 14 S.W.3d 405, 407 (Tex. App.—Waco 2000, no pet.); *Garner v. State,* 939 S.W.2d 802, 805 (Tex. App.—Fort Worth 1997, pet. ref'd).  A court will not abuse its discretion by admitting evidence based on a belief that a reasonable juror could find that the evidence has been authenticated or identified properly.  *Avila,* 18 S.W.3d at 739; *see also Pondexter v. State,* 942 S.W.2d 577, 586 (Tex. Crim. App. 1996), *cert. denied,* 522 U.S. 825 (1997).

Proof of the chain of custody goes to the weight of the evidence and not its admissibility.  *Lagrone v. State,* 942 S.W.2d 602, 617 (Tex. Crim. App. 1997), *cert. denied,* 522 U.S. 917 (1997); *Garner,* 939 S.W.2d at 805.  Proof that validates the beginning and the end of the chain of custody will support the admission of evidence, barring any evidence of tampering or alteration.  *Stoker v. State,* 788 S.W.2d 1, 10 (Tex. Crim. App. 1989), *cert. denied,* 498 U.S. 951 (1990); *Hall v. State,* 13 S.W.3d 115, 120 (Tex. App.—Fort Worth 2000), *pet. dism'd, improvidently granted*, 46 S.W.3d 264 (Tex. Crim. App. 2001).  Unless there is proof of tampering or commingling involved with the evidence, gaps or theoretical breaches in the chain of custody will not affect the admissibility.  *Lagrone,* 942 S.W.2d at 617; *Silva,* 989 S.W.2d at 68.  If the

24

appellant raises any minor theoretical breaches in the chain of custody, they will also go to the weight rather than the admissibility of the evidence. *DeLeon v. State,* 505 S.W.2d 288, 289 (Tex. Crim. App. 1974); *Hall,* 13 S.W.3d at 120. Additionally, showing a possibility of tampering or commingling is not sufficient to deny admission of the evidence. *Darrow v. State,* 504 S.W.2d 416, 417 (Tex. Crim. App. 1974)*; Dossett,* 216 S.W.3d at 18.

Here, the State provided evidence to validate the beginning and the end of the chain of custody for the vaginal swabs. The State first offered Johnson's testimony that she was the analyst who performed the DNA testing on the swabs. Johnson testified that she received, directly from the Fort Worth Police Department, six vaginal swabs and two buccal swabs along with other items involved with appellant's case. She also testified that she knew the items had previously been reviewed by UNTHSC because the evidence tape on the box had been opened. Johnson stated that she was not sure what tests the lab at UNTHSC ran on the swabs, but all of her tests ran properly and without signs of contamination or tampering. Johnson later testified that she believed that UNTHSC tested the samples for seminal fluid.

The State then provided testimony from Hynson to establish the beginning of the chain of custody. Hynson testified that she was responsible for obtaining the vaginal swabs from D.W., and that after she took the swabs,

25

she packaged and labeled the evidence according to the proper standards.[2]

After Hynson initialed everything in the evidence box, the evidence was placed in a safe to be picked up by the Fort Worth Police Department. Hynson also testified that she would have taken more than four swabs if there was bleeding from any of the injuries.

Appellant contends that the testimony from Hynson provides affirmative proof that the swabs were tampered with because she testified that there were only four vaginal swabs taken, but Orchid Cellmark received six vaginal swabs. Moreover, appellant argues that because Johnson was unaware of the specific tests performed at UNTHSC before she received the evidence, there was additional proof of tampering or commingling.

The discrepancy in the number of swabs taken is not affirmative proof that the evidence was tampered with or contaminated. Hynson testified that it was common procedure for her to take more than four swabs if the injuries

---

[2] After collecting the swabs, Hynson put the swabs into a sealed air dryer that preserves the DNA. She remained with the samples as they dried for twenty to thirty minutes. Once dry, the swabs were packaged, sealed, labeled, and placed into another box, which was also sealed and labeled. The box was then placed in a police evidence bag, which is also sealed and labeled, and dropped into a safe for the Fort Worth Police Department to pick up. Hynson testified that she initialed each of the labels after she identified and labeled the source of the evidence. She also testified that she was with the swabs until they were dropped in the evidence safe.

were bleeding, as they were in this case. Furthermore, the possible gap in the chain of custody concerning what tests did or did not take place at UNTHSC represents a minor theoretical breach in the chain of custody that goes towards the weight of the evidence and not its admissibility. *See Dossett,* 216 S.W.3d at 21; *Hall,* 13 S.W.3d at 120. At most, appellant has shown a possibility of tampering or commingling, which is insufficient to exclude the evidence. *Stoker,* 788 S.W.2d at 10; *Dossett,* 216 S.W.3d at 21.

Because there was no affirmative evidence offered to substantiate a claim for tampering or commingling of the swabs, the trial court did not abuse its discretion in determining that a reasonable juror could find that the swabs were properly authenticated. *See Dossett,* 216 S.W.3d at 21. Additionally, the State substantiated the beginning and the end of the chain of custody for the swabs. *See Hall,* 13 S.W.3d at 120; *Dossett,* 216 S.W.3d at 21. We hold that the trial court did not abuse its discretion in admitting the evidence. *See Burden,* 55 S.W.3d at 615; *Deleon,* 505 S.W.2d at 289; *Hall,* 13 S.W.3d at 121. We overrule appellant's ninth point.

## Conclusion

Having overruled all of appellant's points, we affirm the trial court's judgment.

TERRIE LIVINGSTON
JUSTICE

PANEL A:   CAYCE, C.J.; LIVINGSTON and MCCOY, JJ.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED: April 24, 2008

28